In re FIRST INTERNATIONAL SERVICES CORPORATION, Strategic Marketing Services, Inc., Command Performance Realty, Inc. C.P. Operations, Inc. Saugatuck Enterprises, Inc., Strategic Advertising Services Company, Inc., Debtors.

COMMAND PERFORMANCE OPERATORS, INC., General Unsecured Creditors Committee and Franchisees Creditors Committee, Plaintiffs,

v.

FIRST INTERNATIONAL SERVICES CORPORATION, Strategic Marketing Services, Inc., Command Performance Realty, Inc., C.P. Operations, Inc., Saugatuck Enterprises, Inc., Strategic Advertising Services Company, Inc., the Clements Group, Inc., Walter J. Wright, Richard J. Wall, Adrian C. Deacon, James J. Dore, Morton Bailey, Jr., William E. Chambers, Jr., Peter Dunham, Fred M. Emmerich, William F. Rogers, III as Trustee, Star Services, Inc., Roger Cromwell, James Crothers, John Gellatly, and David E. Ladewig, Defendants.

Bankruptcy Nos. 5–81–354 to 5–81–359. Adv. No. 205–5–82–0355.

United States Bankruptcy Court, D. Connecticut.

Sept. 24, 1982.

---

William J. Kupinse, Jr., of Goldstein & Peck, P.C., Bridgeport, Conn., for plaintiff, Command Performance Operators, Inc.

Ira B. Charmoy, of Levin & Charmoy, Bridgeport, Conn., for plaintiff, General Unsecured Creditors Committee.

Edward D. Jacobs, of Greenfield, Krick & Jacobs, P.C., New Haven, Conn., for plaintiff, Franchisees Creditors Committee.

Robert S. Grodberg, Andover, Mass., for defendant, The Clements Group, Inc.

Steven M. Richmond, of Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for defendants First Intern. Services Corp., Strategic Marketing Services, Inc., Command Performance Realty, Inc., C.P. operations, Inc., Saugatuck Enterprises, Inc., and Strategic Advertising Services, Co., Inc.

John R. Bryk, of Blawie, Belinke & Varone, Bridgeport, Conn., for defendants, Adrian C. Deacon and James J. Dore.

David Patrick Burke, of Duel & Holland, Greenwich, Conn., for defendants, Richard J. Wall and Walter J. Wright.

John B. Nolan, of Day, Berry & Howard, Hartford, Conn., for defendants, Morton Bailey, Jr., William E. Chambers, Jr., Peter Dunham, Fred M. Emmerich, William F. Rogers, III as Trustee, Star Services, Inc. and David E. Ladewig.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiffs in this proceeding seek, *inter alia,* an order declaring void an "Agreement for Sale and Purchase of Shares" (Agreement) between the Clements Group, Inc. (Buyer) and the owners of the shares of stock of the debtors (Sellers). Both parties to the Agreement, as well as the debtors, are defendants herein. The debtors are interrelated corporations in the business of operating a franchise system of hair cutting salons.

## BACKGROUND

Trial was held on August 16, 1982, at which time the parties present stipulated to the material facts and issues. The stipulation was reduced to writing and submitted with memoranda of law on August 23, 1982, when the court heard oral argument.

The parties present at the trial on August 16, stipulated to the following facts:

"1. The petition for relief under Chapter 11 was filed April 2, 1982.

2. The agreements submitted as plaintiffs' exhibits 1–10 were entered into after the filing of the petition.

3. No Court approval of the agreements was sought or obtained."

Exhibit 1 is a copy of the "Agreement for Sale and Purchase of Shares" which pro-

vides in part for the sale of all of the stock of the debtors. Exhibits 2–10 are copies of various consulting agreements between the debtors and various shareholders of the debtors. The consulting agreements must be read as an integral part of the Agreement. Indeed, several of the consulting agreements state that "the consideration for this agreement is the mutual promises and premises of the Agreement." (Plaintiffs' exhibits 3, 4, 6 and 7, cl. 2). Other consulting agreements are recognized in the Agreement itself. For example, paragraph 5 of the Agreement provides.

### Consulting Agreement

ADRIAN C. DEACON and JAMES J. DORE shall be employed by COMMAND PERFORMANCE as consultants pursuant to the Consulting Agreement annexed hereto and made a part hereof as "ADRIAN C. DEACON Agreement" and "JAMES J. DORE Agreement."

The consulting agreements contemplated by paragraph 5 of the Agreement are apparently embodied in plaintiffs' exhibits 2, 5, 9 and 10.

The Agreement provides that the transfer of management is to occur upon execution of the Agreement. The closing for the sale of stock is to occur "thirty days (30) days following the lapse of any appeal period after the approval of the plan of arrangement proposed by BUYER or COMMAND PERFORMANCE by the Bankruptcy Court or if an appeal is taken, thirty (30) days following the time after all appeals and rehearings and any further appeals have taken place and expired." (Agreement, ¶ 14). The Buyer is to control the debtors through a voting trust in the interim between the execution of the Agreement and the closing.

At the closing, defendants Morton Bailey, Jr. and Roger Cromwell are to receive a specified amount of stock in the Buyer. In addition, the debtors are to pay $46,000 in attorneys fees incurred by those defendants.

After the closing, the Buyer is to pay the defendants, William E. Chambers, Fred M. Emmerich, James Crothers, Peter Dunham, Star Services, Inc., William F. Rogers, III, as Trustee, John Gellatly and David E. Ladewig, $28,878.00 without interest on the first day of the 36th month after the closing. On the same date, the "consulting group" consisting of the same defendants, is to receive $245,463.00 from the debtors pursuant to the consulting agreement evidenced by plaintiffs' exhibit 8.

As part of the consideration for the sale of their shares to the Buyer, the defendants Adrian C. Deacon and James J. Dore are to be employed by the debtors as consultants. (Agreement, ¶ 5). Under the consulting agreement, evidenced by plaintiffs' exhibit 10, which was to terminate upon the entry of an order of confirmation by the court or December 31, 1981, whichever occurred first, Deacon was to receive a salary at an annual rate of $74,000. In the consulting agreement, evidenced by plaintiffs' exhibit 9, Deacon is to receive $75,000 payable in weekly installments over a four year period, but this payment would not begin until the above mentioned consulting group received the total sums due under its consulting agreement. The consulting agreements between Dore and the debtors are essentially identical to those involving Deacon and the debtors. (See plaintiffs' exhibits 2 and 5). In addition, the Agreement provides that the debtors will indemnify Deacon and Dore, as well as, defendants, Walter J. Wright and Richard J. Wall, from certain claims.

The right to indemnity provided Wall and Wright in the Agreement also appears to be the consideration granted them under their respective consulting agreements (plaintiffs' exhibits 3 and 4). As noted, these consulting agreements refer to the Agreement as the source of the consultants' consideration.

### QUESTIONS PRESENTED

The parties present at the trial on August 16, 1982 stipulated to the following issues:

"(a) Do the consulting agreements (plaintiffs' exhibits 2–10) require Court approval?

(b) If so, since there was no Court approval, is there a binding obligation on the part of the debtor under those agreements?

(c) Without Court approval, is the entire agreement for sale and purchase of shares (plaintiffs' exhibit 1), including the consulting agreements, void?

(d) If not, what portion, if any, is binding on the debtor?"

## DISCUSSION

The Unsecured Creditors' Committee contends that the consulting agreements should be declared void to the extent that they commit funds of the debtors without court approval. It finds the consulting agreements involving defendants Cromwell and Baily inoffensive and objects to those of Wall and Wright only where the debtors are exposed to potential liability for reimbursement of travel expenses. The Unsecured Creditors' Committee also contends that the Agreement itself need only be declared void as to the indemnity provisions.

The plaintiff, Command Performance Operators, Inc. (CPO) takes the attack one step further. It argues that the entire Agreement should be voided since "the agents of the Debtor corporations, as part of a unified transaction, sought to transfer the effective control of all of the debtors' assets to a third party while retaining for themselves certain future benefits from the Debtors' assets" without proceeding under 11 U.S.C. § 363(b). (CPO Br. P. 3).

*Questions (a) and (b) Regarding The Enforceability of The Consulting Agreements*

Section 1108 of the Bankruptcy Code allows a trustee to operate the debtor's business. As a general proposition, a debtor-in-possession has the rights and duties of a trustee. 11 U.S.C. § 1107. Under section 363(b), made applicable to Chapter 11 by section 103(a), "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

▊ As previously noted, the debtor corporations were in the business of operating a franchise system of hair cutting salons. Thus, consulting agreements which were executed in conjunction with the sale of the shares of the debtors' stock and look to the debtors' assets for payment of fees or indemnification without notice and an opportunity for a hearing are unenforceable as contrary to Code section 363(b).

During oral argument, however, the attorney for Deacon and Dore contended that the hearing in progress at that time should be considered the hearing mandated by Code Section 363(b) and that the consulting agreements should be approved on the basis of equitable considerations, including latches. Beyond the obvious failure of the defendants' Deacon and Dore to comply with the notice requirements of code section 363(b), I am not persuaded for substantive reasons that approval of the consulting agreements would serve the best interest of the debtors' estates. As noted in the stipulated facts and the exhibits referred to therein, it is obvious that approval of the consulting agreements would not only subject the debtors' estates to the claims of the defendants, but such approval might deprive the debtors of the right to assert claims against certain defendants arising from breaches of their fiduciary duty. Moreover, it is inappropriate for the defendants Deacon and Dore to protest, on equitable grounds, the voiding of the consulting agreements since it was they who agreed with the Buyer to keep the plaintiffs from learning about the Agreement.[1]

---

1. Paragraph 20 of the Agreement provides "*Confidentiality.* Each of the SELLERS herein understand and agree that if knowledge of this agreement, its terms and its parties come into the hands of creditors or other parties in interest in the Chapter 11 proceedings, said knowledge may severely damage the BUYERS ability to effect a Plan of Arrangement and will frustrate the purposes of this agreement. Each of the SELLERS herein agree not to disclose to anyone the existance, terms and parties to this agreement. The measure of damages of a breach of this paragraph is difficult to assess and not easily quantifiable. Therefore, as liquidated damages the SELLERS agree, in the event of a breach of this paragraph, that all

The defendants Wall and Wright similarly assert the merits of the post petition consulting agreements and invite the court to apply section 365 which governs the acceptance or rejection of prepetition executory contracts. They further argue that the consulting agreements provide for less indemnity than accorded by Delaware law and, consequently, the subject indemnity clauses are unobjectionable. But to whatever extent an indemnity agreement immunizes the defendants Wall and Wright from claims which might be asserted against them by the debtors for breach of a fiduciary duty in their capacity as corporate officers, see In re Happy Time Fashions, 7 B.R. 665 (Bkrtcy.S.D.N.Y.1980) such immunity deprives the estate of potential assets and is not innocuous as claimed by these defendants. The defendants Wall and Wright cannot nullify such claims against them by an indemnity agreement, particularly one which is to be hidden from creditors.

### Questions (c) and (d), Regarding The Enforceability of The Agreement

As to the issues of what part of the Agreement, if any, is enforceable, it should be noted at the outset that both the Buyer and the debtors assume a neutral position in this adversary proceeding. According to their respective counsel, they merely await direction from this court. The attorney for the defendants, Wall and Wright, however, contends that if the indemnity provisions are stricken the entire Agreement should fall. The other appearing defendants, Deacon and Dore, take the position that the court may enforce the Agreement in part, but it is not apparent which elements of the Agreement might be enforced for their benefit. In any event, I conclude that the Agreement in its entirety is void.

■ As discussed more fully below, the secret transfer of management and control of the debtor corporations to the Buyer runs counter to the spirit of the Code.

When in a Chapter 11 bankruptcy context, transfer of control of a debtor corporation to a third party is accompanied by the use of the debtor's assets as consideration for the transfer, a dubious practice becomes untenable. Although many provisions of the subject Agreement ostensibly defer to "applicable law," the sellers, as noted above, promised to keep the entire agreement confidential from parties in interest, acknowledging that interested parties might react adversely to the terms of the Agreement. (See note 1 supra). Under these circumstances, principles of equity dictate that the entire agreement be deemed null and void.

■ As an additional reason for voiding the entire agreement, CPO points to the requirements of Code Section 363(b) which requires a notice and an opportunity for a hearing when "property of the estate" is to be sold other than in the "ordinary course of business."

It is indisputable that the Agreement, providing for, inter alia, the sale of all of the debtor corporations' shares, was out of the ordinary course of the debtors' business. It is equally clear that while the shares of the debtors' stock, owned by non-debtors, are not property of the estate, the sale of all of the debtors' stock and thus the transfer of control of the debtor corporations is an event so inextricably related to the property of the debtors' estates that Code Section 363(b) must be read to include the requirement of notice and a hearing prior to the transfer.

The requirements of section 363(b) protect the creditors' interest in the assets of the estate. See In re Sapolin Paints, Inc. 11 B.R. 930, 936. (Bkrtcy.E.D.N.Y.1981). Thus it may be inferred from that Code section and others that creditors have an interest in those who control the assets of the estate. Code section 1104, for example, allows parties in interest to move for the appointment of a trustee. The Code also gives creditors committees the right to con-

---

benefits under this agreement attributable to said breaching SELLER shall be transferred and inured to the benefit of the BUYER. Notwithstanding any provision of this paragraph,

COMMAND PERFORMANCE or BUYER shall be entitled to an injunction enforcing the provisions of this paragraph."

sult with the debtor-in-possession, section 1103(c)(1), the right to investigate the conduct and financial condition of the debtor, section 1103(c)(2), and the right to participate in the formulation of a plan, section 1103(c)(3). Such rights may well be lost, if the transfer of control of a debtor may occur without notice and an opportunity for a hearing. As noted by bankruptcy Judge Drake, in discussing the bankruptcy court's subject matter jurisdiction under 28 U.S.C. § 1471(b): "It appears to be obvious that an action concerning the ownership of the debtor is 'necessarily related to' the title 11 case of the debtor." *Hurt v. Cypress Bank,* 9 B.R. 749, 753, 7 B.C.D. 398, (Bkrtcy.N.D. Ga.1980). For the above reasons, I conclude that the defendants' failure to comply with 11 U.S.C. § 363(b) forms an independent basis for voiding the entire Agreement.

### ORDER

It is accordingly,

ORDERED that judgment may enter in favor of the plaintiffs that the Agreement and consulting agreements as evidenced by plaintiffs' exhibits 1–10 are null and void.