**In re CENTURY STEEL, INC. (EIN 72–0837815), Debtor.**

**James MURPHY, Plaintiff,**

**v.**

**Charles N. MALONE, Individually and as Trustee for Century Steel, Inc., Defendant.**

Bankruptcy No. 84–00038.
Adv. No. 84–0152.

United States Bankruptcy Court, M.D. Louisiana.

June 12, 1985.

**11.** *See supra* note 6.

Walter L. Smith, III, Baton Rouge, La., for plaintiff.

Charles N. Malone, Baton Rouge, La., for himself individually and as trustee.

WESLEY W. STEEN, Bankruptcy Judge.

## REASONS FOR JUDGMENT

This case presents very difficult issues for decision because the parties failed to define their reciprocal legal rights and obligations at the time that the Complainant paid the sum of $2,000.00 to the Defendant. Subsequent to that payment, the automobile that was the object of the transaction was destroyed; there was no insurance.

Each party now seeks to define his legal relationship in a manner that would permit maximum recovery. The Court makes the following findings of fact from stipulation of counsel, from documents introduced into evidence, and from the testimony of the witnesses at trial.

## I. Facts

Century Steel, Inc. filed its bankruptcy case on January 20, 1984. James C. Murphy was the President and sole shareholder of the debtor corporation.[1] One of the assets of the corporation was a 1981 Toyota Cressida automobile. Charles Malone (hereinafter "Malone") was appointed trustee of Century Steel, Inc.

Early in 1984 Malone discussed with Murphy his purchase of the Toyota. Murphy indicated that he would like to purchase the automobile because he had previously used it for his personal transportation and because he had no other vehicle for that purpose. Malone told Murphy that Malone would sell the vehicle to Murphy for assumption of the first lien indebtedness plus $2,000.00 cash to the estate. Murphy discussed this offer with his father, the Complainant, and the latter resolved to purchase the vehicle for a sum not to exceed $4,000.00 (calculated as $2,000.00 cash plus assumption of the mortgage indebtedness). The mortgage on the vehicle had a balance due of about $1,500.

On July 18, 1984, Malone wrote to Murphy, requesting that the vehicle be returned to Malone not later than July 23, 1984, unless arrangements were made to purchase the vehicle. Apparently there was no response to that request and Malone corresponded again on August 13, 1984, insisting that Murphy pay $2,000.00 within 48 hours or else deliver the vehicle to Malone.[2]

---

1. James C. Murphy is hereinafter referred to as "Murphy". The Plaintiff in this case, James E. Murphy, is the father of James C. Murphy. To avoid confusion, James E. Murphy is referred to in the opinion as "Complainant" rather than by his proper name.

2. These correspondences are evidenced by Exhibit D-1. Although the Complainant questioned whether these pieces of correspondence were ever received by Murphy, Malone's testimony convinced the Court that they were mailed in the ordinary course of business and probably received by the addressee.

On August 15, 1984, the Complainant wrote a $2,000.00 check to Malone. The check bears a notation of the case number and the notation "Deposit-Toyota." Both parties agree that possession of the vehicle was retained by Murphy on account of the delivery of this $2,000.00 check to Malone. Both parties expected that Malone would apply for Court approval to sell the vehicle for the price of $2,000.00 plus assumption or satisfaction of the mortgage indebtedness and that title would be delivered to the Complainant upon the necessary Court authorization being obtained. Malone did not file the necessary motion for Court approval prior to September 8, when the vehicle was totally destroyed in a collision. There was no insurance on the vehicle.

The testimony of Malone and the Complainant is contradictory concerning their understanding of the "deal" they had thus made. Complainant asserts that he thought he had made a deposit so that he would have an amorphous "right to buy" at some undetermined price (not to exceed $4,000.00), at some undetermined time after some ill-understood legal proceedings necessary to convey title. Malone asserts that he intended to enter into an agreement to sell the vehicle to Complainant for $2,000.00 cash plus assumption or satisfaction of the first mortgage debt, and that on account of the agreement to sell Murphy would be allowed to retain possession of the vehicle; the sale itself was conditioned only on Court approval. If the parties were so far apart in understanding the deal, there would be no contract since there would be no meeting of the minds. But this is not such a case. The Court does not find Complainant's testimony to be credible; the Court believes that Complainant understood the deal exactly as Malone did and that Complainant understood that he had entered into an agreement to buy, with the accessory obligation for Malone to allow Murphy to retain possession of the vehicle pending application to the Court for authority to sell.

## II. Legal Contentions of the Parties

■ The trustee contends that a sale has been perfected. Louisiana law provides that a sale of movables is complete upon agreement on the thing and the price, without further documentation. The Complainant contends that the sale was not complete and that the risk of loss remained with the trustee. The Complainant is correct. 11 U.S.C. § 363(b)(1) provides that "the trustee, after notice and a hearing, may ... sell ... property of the estate." Since the trustee did not have authority to sell until after notice and a hearing, there was no sale.

But to say that the sale had not been effected does not conclude the determination of these issues. The legal issue could be resolved under either of two lines of reasoning, both reach the same result.

■ First, the agreement constituted an agreement to sell, with an additional obligation on Malone to allow Murphy to possess the automobile pending legal proceedings. The obligation to allow Murphy possession of the vehicle has been satisfied. With respect to the obligation to sell, Murphy has indicated that he would not complete his obligations of assuming the mortgage or taking title. Therefore, Malone is not in default; he need not have filed a motion to sell and could not complete delivery of title because of Complainant's refusal to carry out his obligations under the contract to sell. *See* La.C.C. Art. 1772. Complainant has not made out his right to judgment for $2,000.00 since he has not proved a default by Malone or any other legal grounds for return of the $2,000.00. So far as the Court can tell, Malone has satisfied all his obligations under the agreement to sell except the one made impossible by Complainant.

■ Second, the Court could conclude that Malone's agreement to allow Murphy to use the vehicle is governed by La.C.C. Arts. 2893 *et seq.*, a loan for use.[3] The

3. Considering all the evidence introduced, the Court is convinced that the Complainant was

purchasing the vehicle, but Murphy was acting as the agent for the Complainant in these trans-

legal rights and responsibilities of the parties pursuant to this loan for use would be governed by the Civil Code article cited. Having received the vehicle as a borrower,[4] the Complainant was required "to keep and preserve it in the best possible order."[5] Having failed to do so, the Complainant is responsible to the trustee for the damages sustained.[6]

Had Malone filed a counterclaim, the Court might render a different judgment, but he did not. The issue before the Court is Complainant's prayer for judgment against Malone for $2,000.00; that prayer is denied for failure of the Complainant to show legal grounds entitling him to the judgment sought. Judgment is rendered in favor of Malone, dismissing Complainant's demands at Complainant's costs.

[redacted]

actions. The Complainant is therefore bound by any representations and agreements that Murphy may have made in connection therewith since Murphy was delegated the role of all communication with Malone. Murphy delivered the check for the cash portion of the price, and was acting under apparent authority of Complainant. Since Malone demanded the $2,000.00 or surrender of the vehicle, and since the Complainant gave the check for $2,000.00 in response to that demand, and since the Complainant entrusted to Murphy all representation and communication with the trustee, and since on account of the delivery of the $2,000.00 the possession and use of the vehicle was continued in Murphy, the Court is convinced that the loan for use whereby Murphy retained the possession and use of the vehicle was part of the reciprocal obligations entered into as part of the contract to sell.

4. Complainant was a borrower through his agent and intended beneficiary, Murphy.

5. La.C.C. Art. 2898.

6. A case similar to the instant case is *Short v. Mossy Motors, Inc.*, 354 So.2d 734 (La.App. 4th Cir., 1978). The liquidated damages issue in that case is not present in the instant case. However, the case establishes a presumption that damage to a loaned object is the fault of the borrower. The evidence at trial did not establish fault for damages, despite allegations of Murphy's "DWI" charge as the cause of the damage. The presumption, however, would be sufficient. *See also Roy Young, Inc. v. Delcambre, Inc.*, 233 So. 2d 612 (La.App. 3d Cir., 1970).