907 F.2d 1138
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HORSE HAVEN, INC., Plaintiff-Appellee,
v.
Jack STEPHENS; Bernice Stephens, Defendants-Appellants,
and
Calvin Zedd, Col., Defendant.
HORSE HAVEN, INC., Plaintiff-Appellee,
v.
Calvin ZEDD, Col., Defendant-Appellant,
and
Jack Stephens; Bernice Stephens, Defendants.
 Nos. 89-2071, 89-2075.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1990.
Decided June 19, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, District Judge. (CA-88-797-N)
 Jonathan L. Hauser, Lyle, Siegel, Croshaw & Beale, P.C., Virginia Beach, Va., Carolyn Camardo, Marcus, Santoro & Kozak, Portsmouth, Va. (Argued) for appellants. Frank J. Santoro, Marcus, Santoro & Kozak, Portsmouth, Va., on brief:
 John R. Lomax, Fine, Fine, Legum & Fine, P.A., Virginia Beach, Virginia, for appellee.
 E.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and DONALD RUSSELL and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this case, we consider whether a purchaser of substantially all of a Chapter 11 bankruptcy estate may maintain a breach of contract action against the bankrupt when the bankrupt failed to gain the prior approval of the bankruptcy court before attempting to sell to the purchaser. The district court found that no breach of contract cause of action exists in that instance, and we affirm.
 
 I.
 
 2
 This case involves the Chapter 11 bankruptcy of Horse Haven, Inc., and specifically concerns its only substantial asset, a 25-acre parcel of real estate. Horse Haven was faced with an upcoming foreclosure sale of its property. It decided to attempt to sell the property itself beforehand, and employed a Colonel Calvin Zedd to conduct the sale. Zedd conducted the auction on May 15, 1988, and Jack and Bernice Stephens were the successful bidders at $255,000. The closing was to occur within five days after the auction. Shortly after the auction and before the planned closing, the Stephenses' attorney discovered that Horse Haven was in Chapter 11 bankruptcy, and that its certificate of incorporation had lapsed for non-payment. Because of these problems, the Stephenses' attorney notified Horse Haven that Horse Haven was not ready, willing and able to go through with the sale. For that reason, the closing was not held within the five-day period.
 
 
 3
 Horse Haven soon sought to enjoin the pending foreclosure sale, since it had already auctioned the real estate. However, this injunction application was refused, and the foreclosure sale took place on May 21, 1988. At that auction, the Stephenses were again the successful bidders, but this time at the higher price of $305,000. Subsequently, the Stephenses filed a breach of contract claim against Horse Haven for the price difference plus expenses, totalling $51,000. The bankruptcy judge overruled the defendant's objection to this claim.
 
 
 4
 The district court overturned this ruling on appeal. The district judge found that since the Zedd auction was a sale of substantially all of the assets of Horse Haven and such a sale was not in the ordinary course of business, such a sale required the prior approval of the bankruptcy court. Since there was no prior approval, the sale was void, and since there was no sale, there could be no breach of contract action. The Stephenses appeal this ruling. They argue that the requirement of bankruptcy court approval should not bar a breach of contract action between the buyer and seller.
 
 
 5
 The district judge was correct in his ruling. Title 11 U.S.C. Sec. 363(b)(1) (1989 supp.) requires that the bankruptcy court give prior approval of such a sale.* Other courts that have considered this issue have held that such a sale made without the prior approval of the bankruptcy court is void and unenforceable against the trustee or debtor-in-possession. In re Fidelity Standard Mortgage Corp., 839 F.2d 1517, 1522 (11th Cir.1988); In re Century Steel, Inc., 56 B.R. 268, 270 (Bankr.M.D.La.1985); In re First International Services Corp., 25 B.R. 66, 69, 71 (Bankr.D.Conn.1982). The rule embodied in subsection 363(b) is necessary to protect the creditor's interests in the assets of the estate. If this breach of contract action were allowed to proceed, the purposes behind subsection 363(b) would be undermined.
 
 
 6
 The appellees argue that this rule is immaterial, since it "was imposed by the United States Bankruptcy Code and not by the Stephens." This is a rather oblique statement. Presumably, the Stephenses' argument is this: it was not a term of the contract between the Stephenses and Horse Haven that prior bankruptcy court approval be secured. Thus, Horse Haven was in breach because it was unable to close the deal. True, the Bankruptcy Code prohibits the remedy of specific performance, but there is no reason why it should prevent a breach of contract action for money damages. However, the Stephenses do not cite one case or statutory provision to support their position.
 
 
 7
 When the Stephenses' reasoning is thus exposed, its weakness become obvious. The Stephenses' argument assumes that there is no harm in allowing a monetary damage award in this situation. Yet, a civil judgment for the Stephenses would compete with the valid claims of other unsecured creditors for the limited assets of the bankrupt corporation. Because the Stephenses' position is unsupported by any statute or case law, and since its reasoning is unsound, we decline to follow it.
 
 II.
 
 8
 The Stephenses were not the only ones to file a suit arising from the Zedd auction. The auctioneer, Colonel Zedd, also filed a breach of contract claim. Under the terms of Zedd's contract with the Stephenses, Zedd was to receive three percent of the sales price in the event of a sale, and would receive $500 plus expenses if the property were not sold at auction.
 
 
 9
 In the bankruptcy court, Zedd made a claim for three percent of the sales price as an administrative expense priority. This claim was allowed by the bankruptcy court sua sponte. However, the district court overruled this claim in two respects. First, the district court ruled that this fee could not have administrative expense priority since the bankruptcy court had not approved of the hiring of Zedd. Under 11 U.S.C. Sec. 327(a), the employment of a professional by the debtor requires the approval of the bankruptcy court, and undoubtedly an auctioneer is a professional. Thus, Zedd's claim is a general unsecured claim. Zedd does not dispute this ruling on appeal. Second, the district judge ruled that Zedd was not entitled to three percent of the sales price because the sale was never closed. Instead, the judge ruled that Zedd only had a claim for $500 plus expenses.
 
 
 10
 Zedd appeals the amount of his claim. He argues that he did all that his contract required, and it was not his fault that the sale did not go through, so he is entitled to payment based upon a successful sale. Yet, Zedd overlooks the true nature of the district judge's finding. He ruled that there was no "sale" of the property until the closing was successfully completed. Insofar as Zedd's contract was concerned, the district court found that Zedd had assumed the risk that the sale would not close, and that he would end up with a lesser fee. The district court specifically found that the contract between the Stephenses and Zedd did not call for Zedd merely to produce a "ready, willing and able buyer." Zedd has not challenged these findings of fact. Thus, the district court was correct in finding that Zedd was not contractually entitled to the three percent commission.
 
 
 11
 AFFIRMED.
 
 
 
 *
 Title 11 U.S.C. Sec. 363(b)(1) (1989 supp.) provides:
 The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.