**In re HYDRAULIC MACHINERY, Inc.**

No. 31296.

United States District Court
E. D. Michigan, S. D.

Dec. 13, 1949.

2. The petitions for compensation and the amounts requested are as follows:

George M. Ingram
6450 Georgia Avenue
Detroit 11, Michigan
Co-Trustee and Permanent Trustee

| | | |
|---|---:|---:|
| For services | $33,500.00 | |
| For disbursements | 1,500.00 | $35,000.00 |

Harry L. Wise
2362 National Bank Building
Detroit 26, Michigan
Co-Trustee from 8/19/47 to 10/10/47

| | | |
|---|---:|---:|
| For services | 2,566.20 | |
| For disbursements | 440.69 | 3,006.89 |

Mark L. Rowley
1709 Ford Building
Detroit 26, Michigan
Attorney for Co-Trustee and for Permanent Trustee

| | |
|---|---:|
| For services | 26,000.00 |

Clarence H. Johnson, C.P.A.
7 E. Grand Avenue
Highland Park 3, Michigan
Auditor

| | | |
|---|---:|---:|
| For services | 8,250.00 | |
| For disbursements | 1,503.12 | 9,753.12 |

Heal, Deeley, LoCicero & Wilke
and Archie Katcher, of Counsel
2362 National Bank Building
Detroit 26, Michigan
Attorneys for Debtor

| | | |
|---|---:|---:|
| For services | 7,500.00 | |
| For disbursements | 475.45 | 7,975.45 |

Goodwin, Rosenbaum, Meacham
and Bailen
824 Connecticut Avenue, N. W.
Washington, D. C.
Special Tax Counsel for Trustee

| | | |
|---|---:|---:|
| For services | $ 7,730.26 | |
| For disbursements | 139.05 | $ 7,869.31 |

Creditors' Committee

| | | |
|---|---:|---:|
| For services | 1,725.00 | |
| For disbursements | 503.77 | 2,228.77 |

Noble T. Lawson
1930 Buhl Building
Detroit 26, Michigan
and Miller & Stern
2388 National Bank Building
Detroit 26, Michigan
Attorneys for Creditors' Committee

| | | |
|---|---:|---:|
| For services | 15,000.00 | |
| For disbursements | 239.10 | 15,239.10 |

Stockholders' Committee

| | | |
|---|---:|---:|
| For services | 2,000.00 | |
| For disbursements | 132.43 | 2,132.43 |

I. A. Capizzi
2341 National Bank Building
Detroit 26, Michigan
Attorney for Stockholders' Committee

| | |
|---|---:|
| For services | 2,000.00 |

| | |
|---|---:|
| TOTAL | $111,205.07 |

LEDERLE, Chief Judge.

Findings of Fact

1. This corporate reorganization proceeding of Hydraulic Machinery, Inc., a Michigan corporation, is presently before the court for determination of the applications for allowance of compensation to various parties, after entry of an order adjudging the Debtor a bankrupt and directing that bankruptcy be proceeded with. All parties in interest were notified of hearing on these matters, and hearings were held on September 13 and 14 and October 17, 1949.

668

3. This proceeding originated with a petition for reorganization filed by the Debtor corporation on August 15, 1947. This petition listed assets as $1,317,193.37 and debts as $663,578.76. Capital stock issued and outstanding was listed as 311,810 shares of common stock, par value $1.00, and 2,015 shares of common stock held in escrow. The corporation was engaged in the business of manufacturing and selling special machines, hydraulic equipment and pumps, with a sales distribution throughout the United States. It operated two plants, one in a building owned by the Debtor in Dearborn, Michigan, employing some 25 persons, known as the Hy-Mac Division, and the other in a leased building in Dayton, Ohio, employing approximately 125 persons, known as the Duro Division. On August 19, 1947, the petition was approved, and an order entered appointing Harry L. Wise, the President and General Manager of the Debtor, as Temporary Co-Trustee with George M. Ingram, authorizing them to carry on the business and directing them to submit a brief statement of their investigation of the property, liabilities and financial condition of the Debtor, the operation of its business and the desirability of continuance thereof. The date for hearing as to continuance of the Temporary Co-Trustees was fixed for October 6, 1947. The Temporary Co-Trustees qualified and assumed their duties on the date of their appointment. Upon petition of Co-Trustee Ingram, Clarence H. Johnson, C.P.A., was appointed Auditor for this estate on August 19, 1947, in which capacity he has served to date. For a month and a half after institution of this proceeding, all legal services for this estate were performed by Archie Katcher and the firm of Heal, Deeley, LoCicero & Wilke, attorneys for Debtor. This firm, with Archie Katcher as counsel, served as attorneys for Debtor until resignation of Mr. Katcher on December 22, 1948, since which time the firm alone has served in this capacity. On October 1, 1947, Mark L. Rowley was appointed as attorney for the Temporary Co-Trustees. On October 10, 1947, a hearing was held, and George M. Ingram was continued as sole Trustee, with Mark L. Rowley as his attorney, in which capacities they have acted up to the present time. On December 8, 1947, by formal order, a Creditors' Committee, with Noble T. Lawson and the firm of Miller & Stern as counsel, was permitted to intervene, which committee and counsel have served throughout. A Stockholders' Committee, represented by I. A. Capizzi as counsel, was permitted to intervene by order entered May 14, 1948, and they have acted as such since that time.

4. On December 18, 1947, practically all of the real and personal property of Debtor's Hy-Mac Division at Dearborn, Michigan, was sold at auction for the sum of $445,000.00, possession being given to the purchaser on February 1, 1948. From August 19, 1947 to January 31, 1948, this plant was operated under the trusteeship herein to complete orders in process. This plant was operating at a loss and the decision to cease operation was necessitated largely because its main hope of continuing in business, an ice cream machine in process of development there and into which considerable capital had been and would have to be invested, was determined to be an exceedingly unprofitable venture, with contracts outstanding to sell the machine at less than cost, and the ultimate mechanical success of the machine was problematical.

5. At the time this proceeding was instituted, production had ceased at the Duro Division at Dayton, which mainly manufactured pumps, due to a lack of working capital. Primarily as a result of Trustee Ingram's efforts, this plant resumed production on August 20, 1947 through financial arrangements for shipments with sight drafts attached. Operation was continued of the Duro Division business until November, 1948. At this time, debts of the estate far exceeded the assets, operation was at a loss, and continued operation would deplete the assets further. In November, 1948, the personal property which comprised this Duro Division was sold for $225,000.00 to The Duro Company, a new corporation organized by former distributors of Duro products. The machine tool equipment of this Duro Division had been appraised in this proceeding at $60,560.00.

6. Plans of reorganization have been proposed by the Debtor and the Stock-

holders' Committee, none of which was found to be fair, equitable or feasible, or adequately financed. On February 16, 1949, an order was entered, adjudging the Debtor a bankrupt and directing that bankruptcy be proceeded with, reserving to the Judge exclusive jurisdiction over administration claims against the Trustees, preferred claims, accountings by the Trustees, and the allowances of compensation and expenses on the petitions presently under consideration, for the payment of which Trustee retained in his possession $225,000.00. This resulted from total estate receipts of $775,000.00, including $670,000.00 sale price of the two plants, with disbursements of $550,000.00.

7. Administration claims, other than these compensation petitions, have been determined and paid, and Trustee Ingram has filed his final account.

General claims have been filed with the Referee in Bankruptcy, before whom is pending the matter of liquidation of the remaining assets of this estate, consisting principally of a $200,000.00 plenary suit against former corporate officers, charging breach of fiduciary duties in connection with the handling of certain stock, which stock also comprises one of the estate assets. This block of stock consists of 300,-000 shares of the capital stock of Superdraulic Corporation out of upwards of 1,000,000 outstanding $1.00 par value shares, with a corporate net worth in the neighborhood of one-third of a million dollars. In connection with this liquidation under the supervision of the Referee, William C. Maguire has been appointed Trustee in Bankruptcy.

8. During the two-year trusteeship of George M. Ingram, Trustee, he devoted some 2300 hours to the able management of this estate. His first efforts were directed toward investigation of the Debtor's complicated affairs in Dearborn, Michigan, and Dayton, Ohio, followed by successful attempts to provide financing to continue the Duro Division in operation, the main benefit of which operation was the preservation of the Debtor's distributorship organization. Much of his effort was devoted to attempting to place the Debtor upon a sound business footing as the basis for a possible reorganization. He has had many years' experience in the successful management of manufacturing concerns, and his opinions as to proper business procedures and the value and probable future of this enterprise were of great assistance to the court and to all parties concerned. He participated in all phases of the management of the estate and in the investigation, negotiation and determination of all claims and controversies. He is largely responsible for preserving the estate from greater deterioration.

■ The reasonable value of the Trustee's services rendered in this proceeding is $20,000.00, and his reasonable expenses, properly incurred in this proceeding, amount to $1,500.00.

9. Harry L. Wise served as Co-Trustee for 7½ weeks at the inception of this proceeding, during which period he performed many of the duties he had previously performed as General Manager of the Debtor. He was of particular assistance to Trustee Ingram at the time Mr. Ingram was investigating and becoming acquainted with the Debtor's business.

The reasonable value of his services as Co-Trustee is $1,500.00, and his reasonable expenses, properly incurred in this proceeding, amount to $440.69.

■ 10. Mark L. Rowley has served as attorney for the Trustee since October 10, 1947, having served as attorney for the Temporary Co-Trustees for 10 days prior thereto. He devoted some 2000 hours to this work. He is an able attorney with many years' experience in corporation, reorganization and bankruptcy work. He represented and advised the Trustee at numerous conferences and court hearings, and prepared the voluminous documents necessarily filed in this proceeding in the name of the Trustee. His services also entailed considerable investigation and legal research, both in connection with problems arising in this proceeding, and in connection with the plenary action against former officers, the pleadings in which action were drafted and filed by him. His services were necessary to the administration of this estate and aided materially in the preservation of the assets

thereof. He has received an interim allowance of $4,000.00.

The reasonable value of his services as attorney for the Trustee is $20,000,00, which includes the $4,000.00 interim allowance heretofore paid.

■ 11. Clarence H. Johnson, C.P.A., has served as Auditor of this estate since August 19, 1947. He and his assistants have devoted 330 days to this work. His services were particularly necessary because of the confused and misleading state of the corporate books and records. His investigations and reports were of great assistance to the court and to interested parties in formulating a proper picture of Debtor's actual financial condition. His analysis of the Debtor's tax situation was the basis upon which he, the Trustee and the Trustee's counsel obtained in July, 1948, a federal tax reduction of approximately $33,000.00. The order for his appointment provided that he should be compensated at the rate of $25.00 per day per accountant, which is reasonable in view of the work performed and the benefits thereby conferred upon the estate.

The reasonable value of his services is $8,250.00, and his reasonable expenses, properly incurred in this proceeding, amount to $1,503.12.

■ 12. Heal, Deeley, LoCicero & Wilke have served as counsel for the Debtor since the inception of these proceedings; and up until December 22, 1948, they were assisted by Archie Katcher as counsel. Mr. Roe Heal was a director of the Debtor corporation and served as its counsel prior to his preparation and filing herein of the petition for reorganization. These attorneys devoted some 625 hours to legal services in this proceeding. They attended numerous court hearings and participated in conferences between interested parties. They attempted unsuccessfully to obtain refinancing for the Debtor. Much of their services was directed primarily toward carving out of the estate a nonexistent equity for the stockholders at the expense of creditors.

The reasonable value of their services as attorneys for Debtor is $4,000.00, and their reasonable expenses, properly incurred in this proceeding, amount to $475.45.

■ 13. The firm of Goodwin, Rosenbaum, Meacham & Bailen of Washington, D. C., has petitioned for the allowance of $7,730.26 for services and $139.05 for disbursements in connection with services allegedly performed as Special Tax Counsel for the Trustee herein. This firm was appointed as Special Tax Counsel on September 28, 1948, upon petition of the Stockholders' Committee herein, alleging that the attorneys for Debtor and the Stockholders' Committee disagreed with Auditor Johnson as to the legality of certain claims for taxes assessed by the Federal Government. The petition of the Special Tax Counsel, supplemented by the testimony of Eugene Meacham, discloses that this firm expended 59 hours' time, and claims to have achieved a $33,651.32 reduction in the federal tax claims against Debtor. The items comprising this reduction of $33,651.32 were never considered by Auditor Johnson to be proper tax liabilities, and, consequently, they formed the basis of negotiations conducted by Auditor Johnson, Trustee Ingram and his attorney, Mr. Rowley, with the federal tax authorities during the spring and early summer of 1948, which resulted in a report directed to the Debtor by the Internal Revenue Agent in Charge of the Detroit Division, dated July 1, 1948, showing overassessment in this amount. The Special Tax Counsel at no time talked or corresponded with the Auditor, the Trustee or the Trustee's attorney, and during most of the period covered by the petition for services had never seen the Debtor's books, the Debtor's tax returns, Auditor Johnson's reports, nor any data relating to negotiations previously conducted by the Auditor, the Trustee and the Trustee's attorney with the tax authorities. Practically nothing was done in connection with the items on which the Stockholders'. Committee and attorneys for Debtor allegedly disagreed with Auditor Johnson. To allow compensation to the Special Tax Counsel would be tantamount to paying this counsel for working upon the phase of tax controversies which had already been negotiated and settled by the

regular court appointees prior to the time of the Tax Counsel's special appointment and on which there was no disagreement between the Auditor and the stockholders.

■ 14. Early in the proceeding, a Creditors' Committee, composed of seven very able men, was formed, which undertook to act in behalf of all creditors. It secured as counsel well qualified Detroit attorneys with many years' experience in this type of proceeding, namely, Noble T. Lawson and the firm of Miller & Stern. Messrs. Lawson and Stern devoted approximately 650 hours to this matter and their counsel was extremely helpful to the court and to the various parties in interest. This committee and its counsel aided materially in the administration and preservation of this estate. They were particularly helpful in the negotiation and consummation of the very favorable sale of the Debtor's Duro Division to a Dayton group, composed principally of former distributors of Debtor's pumping equipment. They attended numerous conferences and court hearings and successfully opposed efforts of the stockholders to create equities at the expense of creditors.

The reasonable value of the services of the Creditors' Committee is $1,500.00, and their reasonable expenses, properly incurred in this proceeding, amount to $503.77.

The reasonable value of the services of the attorneys for the Creditors' Committee is $8,500.00, and their reasonable expenses, properly incurred in this proceeding, amount to $239.10.

■ 15. On May 14, 1948, a Stockholders' Committee, with I. A. Capizzi as their counsel, was permitted to intervene in this case. The efforts of these parties were connected almost wholly with the previously mentioned attempts to carve out of this estate equities for the stockholders at the expense of creditors. Their services did not aid in the administration of this estate nor in the conservation of the assets.

### Conclusions of Law

1. Having in mind the conservation and preservation of this estate and the interest of creditors and stockholders therein, the extent and nature of the services of the various applicants for allowances for services and disbursements, the labor, time and trouble involved, the results achieved, the character and importance of the matters, the learning, skill and experience required and exercised, the size of the estate, the responsibility undertaken, the ability of the Debtor to pay, the contingency or absoluteness of fees, and having further in mind that the following applicants have rendered services and properly incurred expenses in this proceeding in the amounts set opposite their respective names, which this court has found to be reasonable, an order will be entered fixing the amounts to be paid to each of the following applicants, respectively, as follows, in accordance with 11 U.S.C.A. §§ 641 and 642, viz.:

| | Fees | Expenses | Total |
|---|---|---|---|
| George M. Ingram Co-Trustee and Permanent Trustee | $20,000.00 | $1,500.00 | $21,500.00 |
| Harry L. Wise Co-Trustee from 8/19/47 to 10/10/47 | 1,500.00 | 440.69 | 1,940.69 |
| Mark L. Rowley Attorney for Co-Trustee and Permanent Trustee, unpaid balance | 16,000.00 | —— | 16,000.00 |
| Clarence H. Johnson, C.P.A. Auditor | 8,250.00 | 1,503.12 | 9,753.12 |
| Heal, Deeley, LoCicero & Wilke and Archie Katcher Of Counsel Attorneys for Debtor | 4,000.00 | 475.45 | 4,475.45 |
| Creditors' Committee | 1,500.00 | 503.77 | 2,003.77 |
| Noble T. Lawson and Miller & Stern Attorneys for Creditors' Committee | 8,500.00 | 239.10 | 8,739.10 |
| TOTAL | | | $64,412.13 |

2. The following applicants have not rendered any services or incurred any expenses in this proceeding, or in connection with aiding the administration of this estate, and such order will, therefore, disallow in toto their applications for the allowance of fees and reimbursement of expenses, in accordance with 11 U.S.C.A. §§ 641 and 642, viz.:

Goodwin, Rosenbaum, Meacham and Bailen
Stockholders' Committee
I. A. Capizzi

3. Such order shall also specifically disallow the portion of any partially allowed petition for fees and expenses which is not by such order specifically allowed.

4. For convenience, these findings and conclusions, together with order in accordance herewith, are being mimeographed, and a mimeographed copy of each document will be mailed to each applicant, at the respective addresses listed in finding two, and proof of such mailing will be filed, simultaneously with entry of such documents.