**In re EMONS INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 84–B–10486(PBA).**

United States Bankruptcy Court,
S.D. New York.

July 5, 1985.

---

Wachtell, Lipton, Rosen & Katz, New York City, for Official Creditors' Committee.

Saul, Ewing, Remick & Saul, New York City, for itself and on behalf of Equity Sec. Holders' Committee.

Nathan M. Fuchs, S.E.C., Levin & Weintraub & Crames, New York City, for debtor.

## MEMORANDUM DECISION

PRUDENCE B. ABRAM, Bankruptcy Judge.

On March 30, 1984, Emons Industries, Inc. ("Emons") filed a petition under Chapter 11 of the Bankruptcy Code and has

continued in possession as a debtor in possession. Emons is primarily engaged in the business of railcar leasing and, through its subsidiaries, operated two short line freight railroads and repairs railcars. Emons has been engaged in this business for approximately 13 years.

The common stock of Emons is publicly held. According to the Chapter 11 petition there are 4,974,233 outstanding shares of voting common stock held by 3,000 persons. The debtor also has three series of preferred stock, two of which are held only by two persons and one of which is held by 1,000 persons.

An Official Committee of Creditors was appointed on April 17, 1984. At the time the Chapter 11 petition was filed, each creditor of Emons with more than a *de minimis* claim was a secured creditor or a lessor (collectively the "Institutions"). The Institutions either have a lien on Emons' railcars or have leased railcars to Emons under true leases. Almost all of the Institutions hold substantial unsecured deficiency claims or potential lease rejection claims because the market for, and the value of, railcars has deteriorated in recent years. Therefor, in order to comply with the dictates of the Code relating to representativeness, the United States Trustee formed the Creditors' Committee entirely of such secured creditors and lessors.

On June 18, 1984, the Securities and Exchange Commission (the "SEC") made a motion for the appointment of an equity security holders' committee. No equity security holder requested the appointment of such a committee. Both the debtor and the Creditors' Committee opposed the motion on the grounds that the debtor was insolvent and that therefore no equity committee was warranted. After hearings on the motion commenced, the objections were withdrawn and the court ordered the appointment of an equity security holders' committee by the United States Trustee. No doubt part of the reason that the opposition to the appointment of an equity committee was withdrawn was recognition of the potential problems attendant upon a case in which there is a substantial identity between secured creditors, unsecured creditors and equity holders and there are public shareholders without such other positions.

Despite the court's order of August 2, 1984 directing appointment of an equity committee, no such committee was appointed until December 18, 1984 due apparently to difficulties in finding persons willing to serve.

The motion before the court is an application by the Equity Security Holders' Committee to retain the law firm of Saul, Ewing, Remick & Saul as attorneys, with compensation to be based on hourly rates. The application also requests that the allowed fees and cost of the Saul Firm have priority of payment equal to that of counsel authorized to represent the Debtor and the Creditors' Committee. The application further seeks to have the Saul Firm have access for payment of its allowed fees and costs to any reserve account or accounts established by orders of the court, including without limitation the Order Authorizing Payments to Secured Creditors and Lessors dated October 5, 1984, and the Order Authorizing Payments to Bethlehem Lessors dated February 14, 1985, to the extent that the reserve account or accounts are made available for payment of administration expenses.

The Creditors' Committee has opposed the application to the extent that it seeks to insure payment of the fees and costs of the Saul Firm out of the property of the estate of Emons. The Committee objects to payment out of the proceeds of any Institution's collateral and further objects to any payment out of any unencumbered property of the Emons estate because Emons is hopelessly insolvent and thus the fees and disbursements cannot be justified as reasonable and necessary expenses of this chapter 11 case.

The SEC takes no position on the issue of whether the Saul Firm is entitled to be compensated out of the Debtor's secured assets. However, with respect to the contention that counsel for the equity committee is not entitled to by compensated out of

the estate under any circumstances, the SEC is of the view that the argument is without merit and should be rejected.

The Debtor has taken no formal position.

■ The court has concluded that it is premature to determine to what extent the Saul Firm will be entitled to compensation out of any assets of Emons that prove to be unencumbered. If a plan is proposed and confirmed that provides nothing for shareholders, then it may well be that no fees and disbursements would be awarded to the Saul Firm because in light of the outcome the amounts were not reasonable nor reflective of actual, necessary services. However, that is not a foregone conclusion because it is not known today what services may be rendered nor what benefit they may confer and on whom. The value of the services must be viewed with the benefit of hindsight. There can be no doubt that counsel which takes on representation of the equity committee of an allegedly hopelessly insolvent debtor takes a significant risk. Indeed, this court is of the view that generally no equity committee should be appointed when it appears that a debtor is hopelessly insolvent because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift. See Bankruptcy Code § 1129(b)(2)(B)(ii). The court has denied a motion for appointment of an equity committee in a large Chapter 11 case, subsequently confirmed, on that basis. The court has not altered its view of the correctness of this general rule even though in that case the plan confirmed provided for the participation of equity security holders.

■ The court granted the motion for the appointment in this case when the opposition to the motion was withdrawn because of its view that equity security holders in this case might wish to be active and might possibly have a different view on the issue of insolvency than the Institutions. The substantially overlapping positions of the secured creditors, the unsecured creditors and the shareholders gave rise to the possibility of a squeezeplay against outside equity holders of a sort that the court thought outside equity holders might wish to consider before abandoning their interests. The absence of joinder of any equity holder in the SEC motion and the difficulty of appointing a committee due to lack of interest suggests that outside equity holders are not particularly interested in the outcome of the case. Not every case with public shareholders warrants an equity committee. Nor is it clear that when a committee is appointed but is unsuccessful in obtaining any benefit for shareholders under a plan that creditors through the allowance of an expense of administration should be obliged to bear the burden of the futile effort.

■ The court agrees with the holding of *In re Wilnor Drilling, Inc.*, 29 B.R. 727 (U.S.D.C.S.D.Ill.1982) that *allowed* expenses of administration share *pari passu*. The adjustment mechanism does not lie in applying Bankruptcy Code § 510(c) nor trying to create a subpriority class within Bankruptcy Code § 503. The adjustment mechanism is that of Bankruptcy Code § 330(a)(1). See generally, *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162 (Bankr.S.D.N.Y.1985) (Abram, B.J.).

The court agrees with the position of the SEC that this aspect of the Creditors' Committee's motion is ill-founded and that at this time the court cannot preclude the possibility that the Saul Firm will become entitled to an allowance out of the free assets of the estate. Compare *In re Hydraulic Machinery, Inc.*, 87 F.Supp. 666 (E.D.Mich.1949) (Counsel for stockholders' committee denied compensation in an unsuccessful Chapter X reorganization because their services did not aid in the administration of the estate or in the conservation of the assets).

■ Turning to the other branch of the application, which the court believes to be the more significant one to both the Creditors' Committee and the Saul Firm, the court has concluded that the rights of the Saul Firm necessarily turn on the terms of the various court orders. The Second

Circuit has made it clear that orders involving secured creditors are to be construed in accordance with their actual words. See *In re Flagstaff Foodservice Corp.*, 762 F.2d 10 (2d Cir.1985) and *In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 77 (2d Cir.1984). The benefit to the secured party which must be shown to prevail under Bankruptcy Code § 506(c) imposes a heavy burden on the party seeking to invade the secured party's collateral. After the two *Flagstaff* decisions, it is difficult to see how counsel for an equity security holders' committee would ever be able to prevail under that section.

The principal order is the court's order of October 5, 1984. That order approved payments to Emons' secured creditors in accordance with annexed schedules, directed and authorized Emons to make monthly payments to Institutions commencing with October 1984, provided for an Excess Cash fund to be maintained and invested by Emons and provided that the various payments were without prejudice on the specified terms. The term Net Cash Flow which was material to the implementation of the annexed schedules was defined in an exhibit to the application requesting the court to approve the order. The definition allowed for deductions to be taken from total revenues actually received during a given month for actual disbursements, overhead allocations and 75% of Emons' reorganization related professional fee allocation (the "Professional Fees"), whether accrued or paid.

There is no question but that this provision was inserted in direct response to the Second Circuit's decision in the first of the two *Flagstaff* opinions cited above. Emons' counsel, the firm of Levin & Weintraub & Crames, had been a party to the appeal and had lost its fees as counsel for the debtors in that case when the Second Circuit reversed the lower court's award of fees. Moreover, the secured party which had appealed the fee award had been represented before the Second Circuit by Wachtell, Lipton, Rosen & Katz, counsel to the Creditors' Committee here. Emons' counsel was plainly concerned about undertaking to represent a debtor whose assets were virtually fully secured in what could prove to be a successful reorganization without assurance that at the end of the road the secured creditors would permit payment of at least some amount. The 75% holdback formula allowed the secured creditors to be assured that Emons' counsel would have an incentive to be efficient and effective.

The court finds that the definition of Net Cash Flow provides that the only professional fees to be reserved for are those of counsel for Emons. This limitation is a contractual one that the secured parties were free to impose. Therefore, the court must deny the motion of the Equity Security Holders' Committee to the extent that it seeks inclusion in the prior orders of the court, including the October 24 order, or access to any reserve funds.

A separate order has been signed.