### In re EMONS INDUSTRIES, INC., Debtors.

### Bankruptcy No. 84 B 10486 (PBA).

United States Bankruptcy Court, S.D. New York.

July 23, 1987.

Saul, Ewing, Remick & Saul, Philadelphia, Pa. by William T. Windsor, Jr., J. Dennis Faucher, for the Equity Security-holders' Committee and pro se.

Wachtell, Lipton, Rosen & Katz, New York City by Thomas Moers Mayer, for Creditors' Committee.

Levin & Weintraub & Crames, New York City by Lester Kirshenbaum, for debtor.

## MEMORANDUM DECISION ON APPLICATION FOR ALLOWANCE OF COUNSEL TO THE EQUITY SHAREHOLDERS' COMMITTEE

PRUDENCE B. ABRAM, Bankruptcy Judge:

Yes, Virginia, there is a Santa Claus, at least for administration claimants in a confirmed Chapter 11 case. The secured creditors may be more comfortable in the Uncle Scrooge role. But at confirmation, like it or not, they must play Santa Claus.

The debtor in this case, Emons Industries, Inc. ("Emons" or "Debtor"), confirmed its Chapter 11 plan on December 19, 1986. Applications for allowance were filed by counsel for the Debtor and for the Creditors' Committee and allowances in excess of $1.4 million were made by the court. Counsel for the Equity Security Holders' Committee, the firm of Saul, Ewing, Remick & Saul (the "Saul Firm"), also filed an application for an allowance which seeks compensation for services rendered of $55,399 and reimbursement of expenses of $1,729.61. Both the Debtor and the

Creditors' Committee object to the Saul Firm's application.

The Debtor stated in its objection that it believed the request of the Saul Firm to be "completely without merit." The Creditors' Committee's objection concluded that in their judgment the Saul Firm had provided neither a benefit to the Emons estate as a whole nor to the stockholders in specific. Further, the Creditors' Committee stated that the Saul Firm accepted the representation of the Equity Committee with full knowledge that it might not be compensated for its services and "as a matter of equity, simply has no entitlement to any compensation."

A hearing on the Saul Firm's application was held on July 9, 1987 at which testimony was taken.

The background to the present dispute may be gleaned from this court's prior decision involving the Saul Firm. See *In re Emons Industries, Inc.,* 50 B.R. 692 (Bankr.S.D.N.Y.1985). At that time, the court had before it the application of the Equity Security Holders' Committee to retain the Saul Firm, with compensation to be based on hourly rates, and the Saul Firm's request that its allowed fees and costs have priority of payment equal to that of counsel authorized to represent the Debtor and the Creditors' Committee as all of Emons' assets appeared to be encumbered. The court authorized the Saul Firm's retention but denied the balance of the application holding:

> "[T]he court has concluded that the rights of the Saul Firm necessarily turn on the terms of the various court orders. The Second Circuit has made it clear that orders involving secured creditors are to be construed in accordance with their actual words. See *In re Flagstaff Foodservice Corp.,* 762 F.2d 10 (2d Cir.1985) and *In re Flagstaff Foodservice Corp.,* 739 F.2d 73, 77 (2d Cir.1984). The benefit to the secured party which must be shown to prevail under Bankruptcy Code § 506(c) imposes a heavy burden on the party seeking to invade the secured party's collateral. After the two *Flagstaff* decisions, it is difficult to see how counsel for an equity security holders' committee would ever be able to prevail under that section.

> "The principal order is the court's order of October 5, 1984. That order approved payment to Emons' secured creditors in accordance with annexed schedules, directed and authorized Emons to make monthly payments to institutions commencing with October 1984, provided for an Excess Cash fund to be maintained and invested by Emons and provided that the various payments were without prejudice on specified terms. * * *

> "The court finds that the definition of Net Cash Flow provides that the only professional fees to be reserved for are those of counsel for Emons. This limitation is a contractual one the secured parties were free to impose. Therefore, the court must deny the motion of the Equity Security Holders' Committee to the extent that it seeks inclusion in the prior orders of the court, including the October 24 order, or access to any reserve funds." 50 B.R. at 695.

■ This court must admit that it now sees a right to payment for the Saul Firm without regard to the existence of unencumbered assets that it did not envision at the time of its earlier decision. Confirmation of a plan of reorganization mandates that provision for payment in full in cash be made for all allowed expenses of administration. See Code § 1129(a)(9)(A). Emons' plan provided as required that each holder of an administration claim would be paid in full in cash on the consummation date of the plan or such other date as the bankruptcy court fixed, in the ordinary course of business as the claim matured or as agreed between the debtor and the claimant.

■ Put another way, Code § 1129(a)(9)(A) brings to an end all of the pre-confirmation super-priorities that the secured parties may have obtained. If the secured parties desire confirmation, the administration claims must be paid in full in cash at confirmation even if it means invading their collateral.

The court can now proceed to a determination of how much compensation it should award to the Saul Firm. The Bankruptcy Code § 330(a)(1) states that the court is to award

"reasonable compensation for actual, necessary services * * * based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under [the Bankruptcy Code]."

This court extensively considered the concept of reasonableness as applied to secured creditors' attorneys' fees under Code § 506(b) in *In re Nicfur-Cruz Realty Corp.*, 50 B.R. 162 (Bankr.S.D.N.Y.1985). The court found that the reasonableness requirement mandated that the bankruptcy court consider the policies, purposes and provisions of the Bankruptcy Code; that its assessment must encompass an examination of the value of the work product of the time expenditures to the attorney's client's case; and finally that the services must also be necessary to accomplish the appropriate "end sought." These guidelines are a useful starting point for consideration of a fee application under Code § 330(a)(1).

The Saul Firm is highly qualified and has extensive experience with valuation issues involving rail car leasing, Emons' primary business. The Chairman of the Creditors' Committee testified that the Saul Firm's request was fair and reasonable. The Saul Firm spent 445.1 hours on the case for a blended hourly rate of $124.46. At trial, the Saul Firm provided a breakdown of its services into four categories. The first category was the evaluation of assets including the rail car leases and determination of the tax loss carry forward. This occupied 101.2 hours at a time value of $10,480. The second category was the negotiations with the Debtor over the plan. This took 71.4 hours at a time value of $9,295. The third category, which occupied some 108.9 hours at a time value of $14,179, was negotiations with the Debtor post-

plan filing and commenting on the Disclosure Statement. The final category was review of the various applications and pleadings filed, communicating to the Equity Security Holders' Committee with regard to them and working with the Committee.

The Saul Firm stated at trial that it had reached the conclusion that the Debtor was insolvent early in its evaluations and that as a result it could not press too aggressively and would have run a high risk of an adverse result if it had.

In connection with the Disclosure Statement, the Saul Firm offered constructive comments that highlighted the possibility of a voting squeezeplay.[1] The Saul Firm performed a watchdog function which was not out of line with equity's stake in the case.

The appointment of an equity security holders' committee was not made lightly or automatically by the court and the court found cause for the appointment. Retention of counsel by the committee was reasonable and necessary to its effective operations. Under the confirmed plan, the old common shareholders received shares having a market value of between $50,000 and $125,000.

The reasonableness of the Saul Firm's fees must be determined in light of their client. Unnecessary obstructiveness should not be condoned. There was none here. It is of only secondary relevance to consider the value of the services to the Debtor or to the Creditors' Committee since it was not counsel's purpose to serve the Debtor or the Creditors' Committee. The fees requested are modest in amount in view of those received by counsel for the Debtor and the Creditors' Committee and of the economics of the case. While the fees requested are a significant proportion of the value of the stock received by the Equity Security Holders, that is not inappropriate in this case since one of counsel's primary purposes was determining the val-

---

1. The reasons why an equity committee was appointed are detailed in the court's earlier opinion, see 50 B.R. at 693–4. In particular although there was a substantial identity between secured creditors, unsecured creditors and equity holders as a result of a pre-filing restructuring, there were public shareholders without these other positions.

ue of the Equity Security Holders' rights. Moreover, this court is of the view that the letter prepared by counsel and sent by the Committee Chairman to the Debtor in August, 1986, helped crystallize a plan providing for any participation by the Equity Security Holders.

For the foregoing reasons, this court concludes that the application of the Saul Firm for fees and disbursements should be granted in the amounts requested. A separate order has been signed.