**In re FLORENCE DISCOUNT CENTER, Debtor.**

**Bankruptcy No. 93–10119.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Oct. 4, 1994.

Robert G. Sanker, Cincinnati, OH, for debtor.

Lawrence S. Walter, Dayton, OH, for Life Ins. Co. of Virginia.

William Coley, II, Cincinnati, OH, for Star Bank.

Mark G. Gambill, West Shell, Inc., Cincinnati, OH.

## DECISION AND ORDER ON MOTION FOR FEES UNDER § 506(c)

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case a plan was confirmed May 11, 1994. The debtor and counsel for the debtor, Keating, Meuthing and Klekamp ("KMK"), now move for an order pursuant to 11 U.S.C. § 506(c) to allow them to collect from the proceeds of sale of the real estate which was the subject of the bankruptcy case, $9,324.62, the unpaid balance of its attorney's fee. The motion is opposed by the Life Insurance Company of Virginia ("LICOVA").

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(A).

· Debtor was the owner of commercial real estate located in Florence, Kentucky, known as Florence Discount Center. LICOVA held a mortgage on that real estate as well as an assignment of rents derived therefrom. When debtor defaulted on its loan payments, and when LICOVA undertook to enforce its rights under the assignment of rents, debtor filed the present Chapter 11 bankruptcy case on January 25, 1994. LICOVA then filed a motion for relief from stay and also a motion for an order sequestering rents, prohibiting the use of cash collateral, providing adequate protection, and requiring an accounting. Debtor then filed a motion for permission to use cash collateral, and in addition commenced an adversary proceeding against LICOVA seeking a turnover of rents that LICOVA had collected. The parties settled the several disputes and signed an Agreed Entry which was entered by the court September 14, 1993. Generally, the Agreed Entry provided that debtor was to have a limited period of time in which to attempt to effect a private sale of the property, with the proviso that if, at the end of the period, sale had not been accomplished, the property would be sold at auction. Debtor was unsuccessful in arranging a private sale, and the property was sold at auction in the bankruptcy court, where LICOVA bid in the property at $2,700,000.00.

KMK has been paid $25,000.00 in fees and expenses through June 30, 1994. Of the $25,000.00, $10,000.00 was from the retainer paid by the debtor to KMK, while the other $15,000.00, as authorized in the September 14, 1993 Agreed Entry, was derived from cash collateral consisting of rents collected from the real estate. The final application of KMK for fees and expenses in the case has now been filed. The total amount sought is $34,324.62. The difference between that amount and the $25,000.00 already collected by KMK is the subject of the present motion.

Section 506(c) of the Bankruptcy Code, upon which movants here rely, provides:

(c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

It is the position of movants that they are entitled to recover the $9,324.62 from the sale of the property because LICOVA, the holder of the secured claim in question, was benefitted by the work of counsel. In its motion, KMK stated that its efforts benefitted LICOVA as follows:

... KMK's final application indicates that $5,495.50 of KMK's fees and expenses were related to the drafting and confirmation of the consensual plan of liquidation that provided for and resulted in the sale of the Property to pay LICOVA's secured claim. In addition, a review of KMK's time records indicate [sic] that $782.00 in fees were incurred in negotiating the Agreed Order that provided for the Debtor's filing of a liquidating plan; $2,910.00 in fees were incurred in connection with the negotiation of a sale of the Property; $2,284.50 in fees were incurred in negotiating new leases and lease extensions for the Property; and $2,732.50 in fees were incurred in preparation of financial reports that were shared with LICOVA....

In opposition to the position of movants, LICOVA says that a cap was set in the Agreed Entry of September 14, 1993, of $15,-000.00 which it would contribute to attorneys' fees. Additionally, LICOVA argues that it received no benefit within the meaning of § 506(c) which movants can justifiably charge against the sale proceeds.

■ A fair statement of the applicable law to the question here presented appears in *In re Croton River Club, Inc.*, 162 B.R. 656, 659 (Bankr.S.D.N.Y.1993):

Generally, the normal administrative expenses of the bankruptcy estate may not be recovered from secured claim holders because the trustee acts not for their benefit but for the benefit of the estate and its unsecured claimants. *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir.1984) (hereinafter *Flagstaff I*); *In re Trim–X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982); *In re Codesco, Inc.*, 18 B.R. 225, 228 (Bankr.S.D.N.Y.1982). Section 506(c), however, is the exception to the general rule, applicable when expenses of preservation are incurred primarily for the benefit of the secured interest or where the secured claim holder caused or consented to the accrual of such expenses. *Flagstaff I*, 739 F.2d at 76; *In re Trim–X, Inc.*, 695 F.2d at 301; *In re Codesco, Inc.*, 18 B.R. at 228.

Section 506(c) provides that the "trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). Attorneys' fees may properly be recovered under § 506(c) to the extent of the benefit provided so long as: (i) the services were necessary in order to preserve or dispose of the secured creditor's property; (ii) the amounts charged for such services were reasonable; and (iii) the expenses were incurred for the primary benefit of the secured creditor. (Citations omitted.)

The burden to prove entitlement to fees under § 506(c) rests with the movant, [*General Elec. Credit Corp. v. Peltz(]Flagstaff II[)]*, 762 F.2d [10] at 12 [ (2nd Cir.1985) ], and the burden is a heavy one, *In re Emons Indus.*, 50 B.R. 692, 695 (Bankr.S.D.N.Y.1985).

162 B.R. at 659.

In order to succeed on the present motion, movants, then, have the heavy burden of proving either that the services rendered by KMK were not for the benefit of the estate, but were for the primary benefit of LICOVA, or else that LICOVA consented to the accrual of the attorney's fees and expenses here in question.

■ The court is not persuaded that the services rendered by KMK were not for the benefit of the estate, but were for the primary benefit of LICOVA. KMK relies on this point on the *Croton River Club* case, *supra.* We are agreeable to applying that case, but find it entirely distinguishable on its facts from that before us. In *Croton River Club,* the attorney provided an identifiable separate quantifiable service which directly resulted in an enhanced sale price of the property there under consideration. KMK has made no comparable showing. The services of KMK in the present case were merely typical of those rendered a debtor in a Chapter 11 case such as the present.

■ Nor does KMK fare any better on the alternate possible basis for award of fees, that there was consent by LICOVA to the payment to KMK of the fees accrued. Indeed, we find that on this dimension of KMK's claim, the facts work against them. Both parties have paid attention to the language of the Agreed Entry entered September 14, 1993. LICOVA relies upon it as establishing a cap for its contribution to attorneys' fees. Movants contend that the Entry must be construed not as a total cap to attorneys' fees, but rather only as a cap on attorney's fees to be derived from the cash collateral originating in rental funds. Here movants seek to recover not from rental funds, but from the sale price of the real estate.

It is the conclusion of the court that the determination of the present motion should lie in the fair inferences as to the intention of the parties to be derived from the Agreed Entry. Here, LICOVA, the secured claim holder, consented to the accrual of attorneys' fees in the running of this Chapter 11 case, but it conditioned what it was willing to contribute for that purpose to the amount of $15,000.00. What it consented to is to be found in the Agreed Entry:

1. Debtor shall propose a liquidating plan intended to be confirmed without delay.

2. The liquidating plan will allow the Debtor until March 1, 1994 to sell its sole asset, the real estate commonly known as Florence Discount Center ("Real Estate") at the best price possible in the market, such price to be for an amount at least equal to LICOVA's total claim (including interest, costs, and fees) unless LICOVA gives its prior written consent.

3. If the sale is not closed or if there is not a binding non-contingent sales contract in effect by the close of business on March 1, 1994, then the Real Estate will be sold to the highest bidder through an auction sale at a hearing in Bankruptcy Court. Such auction would be noticed to all parties in interest and advertised, and would take place not later than May 2, 1994 or at such time as the Court may schedule. LICOVA shall be allowed to bid. Regardless of whether the Real Estate is sold on the open market or at the Bankruptcy Court auction, it will be sold free and clear of all liens and interests.

\* \* \* \* \* \*

7. Debtor shall also be entitled to use the rental funds received from the Real Estate to pay administrative expenses approved by the Court. LICOVA specifically agrees that Debtor shall be permitted to use such funds to pay reasonable real estate brokerage fees for leasing or sale (subject to approval by LICOVA) and reasonable advertising costs and also Debtor's court approved attorney fees [and] expenses incurred in connection with this bankruptcy case in an amount not to exceed $15,000.00. Rental funds shall be used to pay attorney fees and expenses in excess of $15,000.00 only upon consent of LICOVA or further order of this Court.

8. LICOVA shall have the right to approve the terms of any lease terminations, renegotiated leases and new leases for the Real Estate during the period in question.

If LICOVA does not give its approval or disapproval within 10 business days of its receipt of copies of the terms or leases to be approved, then it shall be deemed to have given its approval.

.　*　　*　　*　　*　　*　　*

The shape of the Agreed Entry was that LICOVA agreed to a six-month period in which debtor could attempt to effect an advantageous private sale, with there to be an auction if this did not occur. These were to be the subject of a plan submitted to the court.

That is, the entire course of this bankruptcy case as it in fact unfolded was the subject of the Agreed Entry. LICOVA intended to limit its attorney's fee contribution for everything which was embraced within the Agreed Entry to $15,000.00. The benefits for which movants here seek to charge the sale price of the real estate were the subject of the Agreed Entry. That is, leasing and ultimate sale were expressly contemplated. That is what LICOVA consented to, and it is only fair to enforce the limitation on the amount of the fee which they were willing to pay for these purposes, as stated in the Agreed Entry. "Saddling unconsenting secured creditors with professional fees, such as are sought by appellees, would discourage those creditors from supporting debtors' reorganization efforts." *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir.1984). We find this comment to be applicable to the present situation, and a re-enforcement of our conclusion.

The motion is denied.

So Ordered.