In re ANCHORAGE NAUTICAL TOURS, INC., Alaska Cook Inlet Adventures, Inc. and Anchorage Harbormasters, Inc., Debtors.

G. Otto HOLTA, Appellant,

v.

Gordon ZERBETZ, Trustee, Appellee.

BAP No. AK–91–1157 VAsJ.

Bankruptcy Nos. A88–00831, A88–00832 and A88–00833.

Adv. No. A88–00831–001 HAR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 23, 1992.

Decided Sept. 30, 1992.

See also 102 B.R. 741.

William D. Artus, Anchorage, Alaska, for appellant G. Otto Holta.

Erik LeRoy, Anchorage, Alaska, for appellee Gordon Zerbetz.

Before VOLINN, ASHLAND, and JONES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

The bankruptcy court granted the motion of the Chapter 11 debtor in possession to (a) execute an agreement to purchase a vessel and (b) continue to pay a $2,500 monthly salary to Holta, the debtor's president and majority shareholder. A potentially profitable business opportunity for the use of the vessel arose when, after the Exxon Valdez oil spill, vessels were being sought to be used in the cleanup. Holta alleged that he could not raise the funds to certify the vessel for use in the cleanup while the debtor was in bankruptcy. Thereafter, without notice and a hearing, Holta surrendered the vessel to the seller, created a non-debtor corporation in which he was the sole shareholder, and had the seller assign the debtor's purchase agreement to the new non-debtor corporation.

The vessel then engaged in cleanup work producing substantial income for the non-debtor corporation. This income included $90,000 which was owed to the non-debtor corporation for work done in the fall of 1989.

The trustee moved for partial summary judgment to require that the non-debtor corporation turnover the $90,000 in proceeds to the estate on the grounds that the proceeds were estate property because no notice and hearing was provided for the surrender of the vessel. The bankruptcy court granted the trustee's motion. Holta appeals this judgment.

In addition to the $90,000, Holta deposited $60,000 in proceeds produced from the use of the vessel in his personal bank account. The trustee moved to have these proceeds turned over to the estate. After a hearing on the merits, the court entered judgment against Holta to turn over $37,000 of the proceeds to the estate. The final judgment entered by the court included both the partial summary judgment with respect to the turnover of $90,000 and the $37,000 judgment against Holta. Holta appeals this judgment. We AFFIRM.

### FACTUAL AND PROCEDURAL HISTORY

On August 30, 1988, Anchorage Harbor Masters, Inc. filed its Chapter 11 petition.[1] On December 7, 1988, the court granted AHM's motion to jointly administer this case with the related bankruptcies filed by Alaska Cook Inlet Adventures, Inc. and

---

1. Unless otherwise stated, all references to "sections" refer to the Bankruptcy Code, 11 U.S.C. 101 et seq.

Anchorage Harbormasters, Inc. (the Debtors).

On March 17, 1989, the bankruptcy court entered an order [2] that, *inter alia,* authorized the Debtors to: (1) implement their business plan; (2) enter into a charter and purchase agreement with Alderbrook Marine, Inc. (Alderbrook) to purchase the vessel M/V SPIRIT OF ALDERBROOK II (the vessel); and (3) continue paying G. Otto Holta (Holta), president and majority shareholder of the debtor corporations, his $2,500 monthly salary.

Under the charter and purchase agreement with Alderbrook, the Debtors were required to make two $30,000 payments by September 1, 1989. In addition, the Debtors were obligated to purchase the vessel for $300,000. Under the Debtors' business plan, business operations were to be funded by revenues generated from the lease of the vessel.

After entry of the order approving their business plan, the Debtors made the initial $30,000 payment to Alderbrook, paid approximately $10,000 to insure the vessel, and paid $10,000 to transport the vessel to Alaska.

While the vessel was en route to Anchorage, Alaska, the Exxon oil spill occurred and Holta learned that VECO, Inc. (VECO), the primary contractor to Exxon for the cleanup, was looking for vessels to be used in the cleanup. VECO represented to Holta that it would consider leasing the vessel if it was certified by the Coast Guard. The cost of the modifications for Coast Guard certification was approximately $30,000.

In addition to several other potential lenders who declined to lend money to the Debtors, Holta asked Brent Jennison (Jennison), a member of the Creditors' Committee, if he would loan the Debtors $30,000 for certification. At that time, Jennison declined the offer.

On April 17 or 18, 1989, Holta surrendered the vessel to Alderbrook. Shortly thereafter, Holta formed Cook Inlet Cruises, Inc. (CICI), a non-debtor corporation in which Holta was the sole shareholder. On April 19, 1989, Alderbrook assigned the rights of the Debtors under the charter and purchase agreement to CICI. No disclosure of the surrender and assignment of the vessel was made to the attorney for the Debtors and the creditors of the estate.

After the assignment to CICI, Jennison loaned CICI $33,500 to modify the vessel and obtain Coast Guard certification. When the vessel was certified, it was leased to VECO for cleanup work.

During spring and summer of 1989, VECO paid CICI over $218,000 for the use of the vessel. From these proceeds, CICI purchased a cashier's check payable to Holta for $60,000 on October 12, 1989. On October 17, 1989, Holta opened a personal account in Santa Barbara Federal Savings and Loan (SBS & L) and deposited the $60,000 check in the account. VECO owed CICI an additional $90,000 for use of the vessel for the period ending October 15, 1989.

Upon the United States Trustee's motion, the case was converted to Chapter 7 on February 26, 1990. On March 22, 1990, an order was entered approving the abandonment of the estate's interest in the vessel.

On May 9, 1990, the trustee for the estate (Trustee) filed an adversary proceeding seeking the turnover of the $60,000 in proceeds from Holta's SBS & L account and the turnover of the $90,000 in proceeds owed by VECO to CICI for use of the vessel.

The bankruptcy court determined that (1) the surrender of the vessel and the subsequent assignment to CICI did not effectively transfer the vessel from the estate because no notice and hearing was provided to creditors and (2) the proceeds from the unauthorized use of the vessel was property of the estate. The bankruptcy court entered judgment that (1) Holta turn over to the Trustee $37,473 of the $60,000 which Holta deposited in his personal SBS & L account and, (2) CICI turnover to the Trust-

---

**2.** Although a copy of the order was not furnished, both parties agree on the terms of the order.

ee the $90,000 in proceeds from use of the vessel which was owed to or paid by VECO for the period ending October 15, 1989.

## ISSUES PRESENTED

1. Whether the sole shareholder and officer of a corporation has standing to appeal a judgment against the corporation.

2. Whether the surrender of the vessel was a transaction in the ordinary course of business which did not require notice and a hearing.

3. Whether the court erred in finding that $37,473 in proceeds which was received from the unauthorized use of property of the estate did not benefit the estate.

## STANDARD OF REVIEW

The issue of standing is a mixed question of fact and law. We review issues of law de novo. In re American Mariner Indus., Inc., 734 F.2d 426, 429 (9th Cir.1984).

The issue with respect to whether the surrender of the vessel was effective in transferring property of the estate was decided on a motion for partial summary judgment. The proper standard of an appellate court reviewing a partial summary judgment is to view the evidence in the light most favorable to the non-moving party and then determine under a de novo standard (1) whether there is no genuine issue of material fact and (2) whether the moving party was entitled to judgment as a matter of law. In re New England Fish Co., 749 F.2d 1277, 1280 (9th Cir.1984).

At trial the court found that $37,473 in proceeds held by Holta, which was received from the unauthorized use of the vessel, did not benefit the estate. On appeal, a reviewing court may overturn such findings only if clearly erroneous. Federal Rule of Bankruptcy Procedure 8013; In re Anderson, 833 F.2d 834, 836 (9th Cir.1987). A finding of fact is clearly erroneous when, although there is some evidence to support it, on the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made. In re Arnold, 908 F.2d 52, 55 (6th Cir.1990). Where two permissible views of evidence

exist, the fact finder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985).

## DISCUSSION

### A. STANDING TO APPEAL THE ORDER TO TURN OVER $90,000

■ The Bankruptcy Code of 1978, 11 U.S.C. § 101 et seq. does not contain an explicit limitation on appellate standing. Relying on pre-Code law, the Ninth Circuit has adopted a standard that requires an appellant to show that he is a "person aggrieved" by the challenged order of the bankruptcy court. In re Fondiller, 707 F.2d 441, 443 (9th Cir.1983).

Case law from other circuits has refused to confer standing on shareholders who appeal a bankruptcy order where the alleged direct injury is to the corporation. In In re Dein Host, Inc., 835 F.2d 402 (1st Cir.1987), the appellate court held that a director's status as shareholder in the lessor corporation was insufficient to confer standing on the director. The court followed the general rule that a corporation and its shareholders are distinct legal "persons" and should be treated as such. Id. at 405. The court adopted the rule articulated in Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir.1970) (citations omitted), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971):

> A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his corporate shares resulting from the impairment of corporate assets.

Id. at 406.

Similarly, in In re Central Ice Cream Co., 62 B.R. 357 (N.D.Ill.1986), the district court dismissed the appeal by shareholders from the order approving a settlement agreement. The court held that shareholders were not "persons aggrieved" by ap-

proval of the settlement agreement because they had no immediate right to any surplus that the corporation would receive. *Id.* at 359.

■ Supplemental to the bankruptcy cases discussed above, under Alaska law, stockholders and officers of the corporation have no individual right of action against third parties for acts producing harm to the corporation thereby diminishing the value of the stock. *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 645 P.2d 191 (Alaska 1982); *Arctic Contractors, Inc. v. State of Alaska*, 573 P.2d 1385 (1978); *Martin v. Maldonado*, 572 P.2d 763 (Alaska 1977). The rule against individual shareholder suits also applies to cases where all the stock in the corporation is held by one person. *Id.* at 773. The only exception to this rule is when the shareholder suffers a separate and distinct injury from that which other shareholders would suffer or when the shareholder suffers direct injury from a special duty which is owed to him. *Norman v. Nichiro Gyogyo Kaisha, Ltd.*, 645 P.2d at 194.

In the present case, Holta appeals the order to turn over $90,000 owed by VECO to CICI. Although Holta is the sole shareholder and principal in CICI, they are legally distinct persons. Since there is no evidence that the $90,000 owed by VECO is owed directly to Holta, standing cannot be conferred on Holta to appeal the order to turn over these funds.

Holta's argument that he suffers a distinct and separate injury because the $90,000 owed to CICI could be ultimately used to pay off his $37,473 personal debt is without merit. The fact that the action is brought by the sole shareholder of a corporation does not affect the rule that the shareholder has no standing. *See Arctic Contractors*, 573 P.2d at 1385 n. 2; *Martin* 572 P.2d at 773.

## B. TURNOVER OF $90,000

■ Assuming arguendo, that Holta has standing, the court properly found that the $90,000 in proceeds from the use of the vessel must be turned over to the estate.

Holta contends that he was merely conducting the ordinary business affairs of the business when he surrendered the vessel to Alderbrook.

Under § 363(b), notice and a hearing is required for an assignment or sale of an estate asset. If the bankruptcy court does not approve a sale or assignment, then that sale or disposition is not effective. *In re Century Steel, Inc.*, 56 B.R. 268, 270 (Bankr.M.D.La.1985).

Under § 554(a), notice and a hearing is required to abandon property of the estate. Abandonment is not effective without notice to the creditors. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir.1986). Section 554(d) explicitly provides that when property is not effectively abandoned in accordance to § 554(a), it remains property of the estate.

Under the undisputed facts of this case, since notice and a hearing was not provided to creditors when the vessel was surrendered and subsequently assigned to CICI, the vessel remained property of the estate. Section 541(a)(6) provides that proceeds or profits from property of the estate is also property of the estate. Accordingly, all proceeds, including the $90,000 owed to CICI by VECO from the use of the vessel, are property of the estate.

■ Holta's contention that § 363 and § 544 do not apply because the surrender of the vessel was done in the ordinary course of business is without merit. The ordinary business of the Debtors does not include the sale or surrender of vessels. The surrender of the vessel was not done within the ordinary day-to-day operations of the Debtors' business. The record shows that the vessel was a major asset of the Debtors. The business operations of the Debtors were to be funded by revenues generated from operating the vessel. The creditors were entitled to notice and a hearing for such a major transaction. Since no notice and hearing was provided, the vessel and all proceeds earned from its unauthorized use remain property of the estate.

■ Holta also contends that he is not liable for self dealing because under corpo-

ration law an officer does not owe the duty of turning over profits realized from opportunities that the corporation is unable to pursue when the corporation is insolvent.

Case law has distinguished the relationship between debtor corporations and their directors pre- and post-petition as changing the nature of the director's duties from "helmsman to guardian." *In re Baldwin–United Corp.*, 43 B.R. 443, 459–460, n. 22 (S.D.Ohio 1984). That is, "directors of a Chapter 11 debtor are not fiduciaries of the corporation; rather, they are fiduciaries of the estate, which the debtor in possession holds as Trustee for the creditors...." *Id.* at 460. The same reasoning applies to other officers of the debtor in possession.

■■■ Under § 1107(a), the debtor in possession has the same fiduciary duties and liabilities as a Trustee. When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors. *In re Crouse Group, Inc.*, 75 B.R. 553, 557–558 (Bankr. E.D.Pa.1987); *In re Club Dev. & Management Corp.*, 27 B.R. 610, 612 (9th Cir. BAP 1982); *see also* Federal Rule of Bankruptcy Procedure 9001(5). As a fiduciary, a corporate officer is not free to deal with after-acquired property as it chooses, but rather holds it in trust for the benefit of creditors. *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 462 (6th Cir.1982); *see In re Woodson*, 839 F.2d 610, 614 (9th Cir.1988). Accordingly, Holta, as president of the debtor corporations, owed a fiduciary duty to the creditors and the debtor in possession so long as the Debtors remained under the protection of Chapter 11. He violated his trust as a fiduciary.

## C. TURNOVER OF $37,473

■■■ With respect to the court's $37,473 judgment against Holta, Holta contends that the record does not support the judgment against Holta to repay the estate $37,473. The record shows otherwise.

Holta received $60,000 from CICI which were proceeds from the use of the vessel. As discussed above, since the surrender and subsequent assignment of the purchase and charter agreement were unauthorized, the proceeds from use of the vessel remained property of the estate. Accordingly, the $60,000 which Holta deposited in his personal checking account at SBS & L was property of the estate. The only issue at trial was the determination of what, if any, of the $60,000 could be deducted as legitimate expenses which provided a benefit to the estate.

The record indicates that the vessel stopped operating in October 1989. Between December 1989 and May 1990, Holta paid Fay Bandow $4,500 from his SBS & L account for leasing office space for CICI, a non-debtor entity. Since the vessel ceased operating during the period that the $4,500 in rent accrued, the court did not commit clear error in determining that Holta should reimburse this money to the estate.

In October 1989, Holta issued a $7,500 check from his SBS & L account to Jennison who in turn issued a check in the same amount to Holta's attorney. Holta testified that those funds were used to represent *him* in the actions filed by the Trustee against Holta on behalf of the estate. The court was justified in finding that the $7,500 was not applied to the debts of the estate and, therefore, did not commit clear error in determining that this $7,500 did not benefit the estate.

Between December 1989 and May 1990, Holta paid his mother, Donna Holta, $26,000 from his SBS & L account. Of this amount, Donna Holta returned $17,500 to CICI, leaving her with $8,500. Since these funds paid for services rendered after the vessel ceased operations, it was reasonable for the court to find that these funds were not used for the benefit of the estate and should be turned over to the estate.

Of the $60,000 in estate money which was deposited in Holta's SBS & L account, $16,973 remained either in Holta's possession or was used to pay Holta's personal debts. Holta contends that he is entitled to this money because the business plan for the Debtors approved by the court autho-

rized him to draw $2,500 per month as salary.[3]

The transcript of the court's verbal ruling shows that the court concluded that under the facts and circumstances of the case Holta was not entitled to set off his $2,500 monthly salary against the proceeds owed to the estate from the use of the vessel:

> It's $16,973 that went to Mr. Holta, but the basis for doing it is that we're put in this position where he's drawn this money. The enterprise that the company was allowed to do in Chapter 11 was still in Cook Inlet here, a dinner party operation. Mr. Holta went off and did this thing on his own. Don't have a complete picture of all the accounting, but certainly, he wouldn't have been authorized to do this without a complete disclosure.... I think this money that he drew for himself, at least through 1990, it's unclear to me that he's entitled to it under the circumstances of this case, where I believe he sort of end ran the creditors, and to allow him to draw without Court approval, in essence was corporate opportunity, is probably too much to agree to.

The March 17, 1989, order authorizing Holta's salary provided for the continuation of Holta's salary for operating and managing the Debtors' business. Instead of operating the business of the Debtors, Holta, without authorization, breached his fiduciary duty to the estate by using estate property to operate another business for his own benefit. He paid himself from funds belonging to the estate without authorization from the bankruptcy court. The estate expended substantial resources to bring its action to retrieve estate property which was concealed by Holta. Holta's defense contained a number of procedural hurdles which impeded the Trustee and increased legal expenses to the detriment of the estate. On this record, the court did not err in declining to set off Holta's salary from the proceeds which he concealed from the estate.[4]

CONCLUSION

With respect to the turnover of $90,000, we dismiss Holta's appeal on the grounds that as a shareholder, he does not have standing to appeal the decision against the corporation. Assuming arguendo that Holta has standing, the court was correct in finding that the $90,000 earned from the unauthorized use of estate property belongs to the estate.

With respect to the judgment against Holta for $37,473, we find that the record supports the court's findings and order that the disbursement of this money provided no benefit to the estate and should be reimbursed therefor.

---

**3.** Although a copy of the order was not furnished, both parties agree to the terms.

**4.** Section 105(a) provides the court with the equitable power of "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process." Arguably, this section also warrants the court's action.