**In re WANG LABORATORIES, INC., Debtor.**

**Bankruptcy No. 92–18525–WCH.**

United States Bankruptcy Court, D. Massachusetts, E.D.

Nov. 16, 1992.

See also 143 B.R. 794.

James M. Peck, Schulte Roth & Zabel, New York City, George M. Kelakos, Cohn, Roitman & Kelakos, Boston, MA, for Morton Salkind.

C. Hall Swaim, Albert A. Notini, Elizabeth M. Leonard, Hale & Dorr, Boston, MA, for Official Unsecured Creditors' Committee.

Kathleen R. Downing, Boston, MA, for U.S. Trustee.

Michael Cook, Carlene Gatting, Skadden, Arps, Slater, Meagher & Flom, Boston, MA, for debtor.

Nathan M. Fuchs, Chief Counsel, Corporate Reorganization, New York City, for Securities & Exchange Com'n.

## OPINION ON MOTION FOR APPOINTMENT OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

WILLIAM C. HILLMAN, Bankruptcy Judge.

Morton Salkind ("Salkind") alleges that he is the holder of 1.6 million of the 165 million shares of debtor's Class B common stock presently outstanding.[1] His counsel requested that the United States Trustee appoint an equity committee pursuant to 11 U.S.C. § 1102(a)(1)[2] but that officer deemed the appointment inappropriate. The present motion followed.

In it Salkind moved for the appointment of an official committee of equity security holders. The United States Trustee and the Official Unsecured Creditors' Committee ("the Creditors' Committee") objected. After a hearing on November 5, 1992, the Court granted the motion in a bench decision, entered an appropriate order, and indicated that this opinion would follow.

Bankruptcy Code § 1102(a)(2) provides that

> On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

The statute involves two inquiries. It must first be determined whether the appointment of a committee is necessary to assure adequate representation. If it is, then the Court must consider whether it should exercise its discretion and make the appointment.

There is no statutory test of "adequacy of representation" and it must be determined by the facts of the case. *In re.*

*Beker Industries Corp.*, 55 B.R. 945, 948 (Bankr.S.D.N.Y.1985).

Most discussions start with the tripartite test of *In re Johns–Manville Corp.*, 68 B.R. 155, 159 (S.D.N.Y.1986): (1) the number of shareholders; (2) the complexity of the case; and (3) whether the cost of the additional committee significantly outweighs the concern for adequate representation.

The debtor certainly has a significant number of shareholders. Salkind alleges that there are approximately 49,000 holders of Class B shares and 2,000 holders of Class C. The Securities and Exchange Commission ("SEC") asserts that this represents only shareholders of record, and that the true number of beneficial owners of equity interests is probably nearer to 70,000 in the aggregate. These figures are far larger than the number of shareholders held to have satisfied the numerical test in *Beker, supra,* and even more than the 15,000 shareholders held entitled to representation in *In re Baldwin–United Corp.*, 45 B.R. 375 (Bankr.S.D.Ohio 1983). The Court finds that there are sufficient shareholders to satisfy that ground for the appointment of an equity committee.

In so doing, it does not conclude or imply that every case with a large number of equity holders requires the appointment of an equity committee. Each case must be judged on its own facts. A law review article cited by several parties[3] is unpersuasive. The authors do conclude that the presence of an equity committee would have resulted in distributions to shareholders in cases where there were no equity committees and no distributions to equity were in fact made. It would be as logical to conclude that there were no committees in the cases without payments because the equity holders realized the inevitability of total failure. To hold otherwise is to ac-

---

1. He states that there are also outstanding 5.6 million shares of Class C common stock.

2. "As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity

security holders as the United States trustee deems appropriate."

3. L. LoPucki and W. Whitford, *Bargaining Over Equity's Share in the Bankruptcy Reorganization of Large, Publicly Traded Companies,* 139 U.Pa. L.Rev. 125 (1990).

knowledge and legitimize a "blackmail factor" in the presence of an equity committee.[4]

The Creditors' Committee commissioned and submitted to the court a statistical analysis of recent large Chapter 11 cases to demonstrate that most cases did not have equity committees. The data contained in the report was attacked as factually inaccurate by the SEC and in any event does not buttress the Court's views. The fact that a committee was or was not appointed in a particular case must be judged against the facts of that case and is not relevant here.

As to complexity, the Court considers the "weight of the evidence" to support a positive finding. This case, less than three months old, has already generated 15 binders of documents in the office of the clerk of the Court. Salkind's motion, filed when the case was just over two months old, is Document No. 398 in the computer docket. Two weeks later, the United States Trustee's objection to Salkind's motion was filed as Document No. 471. Whether this case is in fact one of the largest ever filed under the Bankruptcy Code, as asserted by Salkind, is an inquiry which the Court has no inclination to explore. The two facts cited, coupled with a review of the docket in general, compel the Court to find that the matter is of sufficient complexity to justify the appointment of an equity committee.

The final element of the *Johns–Manville* equation requires a balancing of the cost of the additional committee against the value of the representation to be provided. It is in this area that the Court must consider the assertion of the United States Trustee that no committee should be appointed since the debtor is insolvent.

The Trustee's argument derives from Judge Abram's assertion that

> generally no equity committee should be appointed when it appears that a debtor is hopelessly insolvent because neither the debtor nor the creditors should have

to bear the expense of negotiating over the terms of what is in essence a gift. *In re Emons Industries, Inc.,* 50 B.R. 692, 694 (Bankr.S.D.N.Y.1985).

The Court agrees. The difficulty arises in applying that principle to the circumstances of the present case, and in particular to the meaning of "insolvency" within the *Emons* rule.

This is not a simple matter of statutory construction where the Court can rest with citation to the balance sheet test of 11 U.S.C. § 101(32). Each party has its own view of the relevant considerations.

The United States Trustee points to the debtor's financial disclosures as of September 30, 1992, which indicate a negative equity of more than 400 million dollars. Thus, he continues, there is no interest to be represented.

Salkind, on the other hand, contends that his shares have value, as they are still trading actively on the American Stock Exchange at a value in excess of zero.

The Official Creditors' Committee disputes this contention, pointing out that debtor's publicly traded debt securities, senior in right to the equity holders, are selling at a deep discount from face value, indicating that the market assigns a no value to the shares.

Adding to the confusion, the debtor asserts that it will not concede that it was insolvent at the time of the filing of its petition or currently. It did not explain in which sense it is not insolvent.

The Court cannot determine from the record and arguments of counsel either what definition of insolvency is appropriate, or if the debtor is insolvent under the applicable test. In any event, the debtor remains in operation at present, albeit at a loss,[5] and is not *hopelessly* insolvent, which is the *Emons* test.

Having determined that a committee is necessary to provide adequate protection to equity holders, the Court must next deter-

---

4. The authors appear to applaud the type of conduct that could lead to penalties under 28 U.S.C. § 1927. *Id.* at 161.

5. According to the United States Trustee, debtor reported a net loss in August in excess of 13 million dollars, and a September loss of over 11 million dollars.

mine whether it should exercise its discretion to do so.

The Court's concern is that, as Judge Buschman noted, "the appointment of additional committees is closely followed by applications to retain attorneys and accountants." *In re Beker Industries Corp., supra* 55 B.R. at 949 (citations omitted). Where the debtor, despite its protestations, is *prima facie* insolvent according to the balance sheet test, and continues to accrue operating loses, it may be that it will prove inappropriate to compensate the professionals hired by the equity committee.

If Salkind individually hires professionals to assist him in obtaining adequate protection for his equity position, the estate will reimburse him for the expenses and fees only if his efforts make a substantial contribution to the case. 11 U.S.C. § 503(b)(3)(D), (b)(4). The result should not be otherwise if he works through an official committee of equity holders.

 Subject to the Court's approval, the equity committee may retain professionals. 11 U.S.C. § 1103(a). However, § 503(b) is expressly inapplicable to the compensation of professionals hired by a committee appointed under § 1102. They are hired on "any reasonable terms," 11 U.S.C. § 328(a), and receive their compensation under 11 U.S.C. § 330, subject to the Court's *ex post facto* control under the last sentence of 11 U.S.C. § 328(a).[6]

 The prerequisites to payment under § 330 are (1) an exercise of discretion by the Court to award compensation for (2) actual, necessary services. There is no express requirement that the services make a substantial contribution to the case, but the Court finds that such a requirement is implicit in the requirement that payment be for services which are actual and neces-

sary. Once again we return to the language of Judge Abram:

> If a plan is proposed and confirmed that provides nothing for shareholders, then it may well be that no fees and disbursements would be awarded to the [counsel for the equity committee] because in light of the outcome the amounts were not reasonable nor reflective of actual, necessary services.... The value of the services must be viewed with the benefit of hindsight. There can be no doubt that counsel which takes on representation of the equity committee of an allegedly hopelessly insolvent debtor takes a significant risk.

*In re Emons Industries, Inc., supra* 50 B.R. at 694.[7]

The Court believes that the above thoughts should provide distant early warning to professionals contemplating employment by the equity committee, and will be incorporated into any order approving employment.

---

6. "Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided ... after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

7. The Court does not agree that the expenses of the committee are presumed to be expenses toward the betterment of the estate, nor that § 1102 committee expenses should be reimbursed unless shown to be frivolous. *In re Evans Products Co.,* 62 B.R. 579 (S.D.Fla.1986) will not be followed.