**In the Matter of KALVAR MICROFILM, INC., Anacomp Inc., Anacomp International, N.V., Florida AAC Corporation and Xidex Development Company, Debtors.**

**Bankruptcy Nos. 96–15 to 96–19 (HSB).**

United States Bankruptcy Court,
D. Delaware.

April 19, 1996.

Brendan Shannon, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Barry J. Dichter, Cadwalader, Wickersham & Taft, New York City, for Debtors.

Jeffrey Wisler, Williams, Hershman & Wisler, P.A., Wilmington, DE, Martin S. Siegel, Berlack, Israaels & Liberman LLP, New York City, for Ingalls & Snyder Value Partners, L.P.

Thomas L. Ambro, Richards, Layton & Finger, Wilmington, DE, Marcia Goldstein, Weil Gotshal & Manges, New York City, for Citibank as Collateral Agent for Senior Lenders.

Norman Pernick, Saul, Ewing, Remick & Saul, Wilmington, DE, Daniel H. Golden, Stroock & Stroock & Lavan, New York City, for Official Committee of Unsecured Creditors.

Philip Trainer, Jr., Ashby & Geddes, Wilmington, DE, for David Ihle, et al.

## BENCH DECISION MOTION FOR THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

HELEN S. BALICK, Chief Judge.

Ingalls & Snyder Value Partners, L.P. have moved for an order directing the appointment of an Official Committee of Equity Security Holders. Certain other individual shareholders have joined this request. These other shareholders state they own in the aggregate about 2 million shares, or more than 4% of Anacomp's issued and outstanding common stock. The debtors, the Official Committee of Unsecured Creditors, and the United States Trustee all object to this motion.

■■■■ The motion is made pursuant to 11 U.S.C. § 1102(a)(2), which states in relevant part: "the court may order the appointment of additional committees of ... equity security holders if necessary to assure adequate representation of ... equity security holders." This statutory standard has been further developed in prior decisions of this court in the *Edisto* and *AMI* Chapter 11 proceedings. As discussed in those prior decisions, the court will consider several factors on such a motion, including:

1. Whether the shares are widely held and publicly traded;

2. The size and complexity of the Chapter 11 case;

3. The delay and additional cost that would result if the court grants the motion;

4. The likelihood of whether the debtors are insolvent;

5. The timing of the motion relative to the status of the Chapter 11 case; and

6. Other factors relevant to the adequate representation issue.

No one factor is dispositive, and the amount of weight that the court should place on each

factor may depend on the circumstances of the particular Chapter 11 case.

Discussing these factors in the order stated, Anacomp has 485,500 shares of its preferred stock. outstanding, and 46 million shares of its common stock outstanding. These shares are publicly traded. The debtor concedes that the common stock is widely held.

The movants and the objectors dispute whether the case is large and complex. Undoubtedly, the dollar size of the debtors is large. However, this is not a complex case from a bankruptcy perspective. This is a pre-planned bankruptcy. The debtors are not attempting to change the nature of its operations through the bankruptcy process, and relatively few operational issues have been brought before the court. Indeed, there are only about 220 docket entries in the first three months of this case.

As to the third factor, undoubtedly additional cost would result if the court grants the motion. The equity committee will seek to retain law firms to represent it, Hellmold Associates to act as its financial advisor at a hefty monthly fee, and possibly other experts. The court notes, in response to something Ingalls stated in its reply brief, that no success fees have been approved in this case.

On the insolvency issue, Hellmold has challenged several of the assumptions utilized by DLJ, and there is at this stage a good faith dispute as to the insolvency of the debtors.

In this case, the timing issue is one of the most important factors. The motion of Ingalls comes very late in light of both pre and post-petition events. After Anacomp's default in April 1995, Ingalls purchased 39,600 shares of preferred stock. Anacomp commenced restructuring negotiations that were publicized. Ingalls knew of this ongoing process. This process did not culminate until December 11, 1995, when Anacomp announced the basic features of a debt restructuring agreement it had negotiated with its unsecured debt holders. A representative of Ingalls was sent a copy of this press release. On January 5, 1996, these Chapter 11 cases were filed, along with a pre-negotiated plan embodying the prior agreement. That plan provided that existing preferred and common shareholders would receive nothing other than warrants to purchase one percent of new common stock. A disclosure statement was filed a week later. Ingalls has failed to explain why it did not contact Anacomp during the eight month pre-petition period about its valuation concerns. No motion was filed in January, yet Ingalls purchased another 83,800 shares of preferred stock on January 25, 1996. Ingalls did not file this motion until March 1, almost two months after the petitions were filed. This delay cannot be justified solely by Ingalls' problem in retaining conflict-free counsel.

The late timing of the motion ties in to the only remaining purpose of an equity committee in this case, which would be to object to confirmation, and litigate the valuation issue. The aforementioned costs associated with the formation of an equity committee cannot be justified in light of this purpose. This observation holds even more true as to common shareholders, as their interests are below those of preferred shareholders.

On the adequate representation issue, Ingalls holds over 30% of the preferred stock. It thus has a substantial stake and can continue to represent its own interests in future matters in this case. While not central to the court's evaluation of this motion, Anacomp's officers and directors were actively involved in the restructuring negotiations. During the negotiation process, they attempted to obtain value for the equity holders. This attempt was soundly rejected by the informal creditors committee. This also supports a finding of adequate representation of equity interests without an official committee.

In summary, the court finds that these factors do not support the formation of an official equity committee at this time.

The motion of Ingalls & Snyder and the individual shareholders for an order directing the appointment of an Official Committee of Equity Security holders is denied. I have signed a simple order to this effect.