**In re NATIONAL R.V. HOLDINGS, INC., a Delaware corporation; and National R.V., Inc., a California corporation, Debtors.**

Nos. 6:07–17941–PC, 6:07–17937–PC.

United States Bankruptcy Court,
C.D. California,
Riverside Division.

Feb. 29, 2008.

Jonathon S. Shenson, David M. Guess, Klee, Tuchin, Bogdanoff & Stern LLP, Los Angeles, CA, for Debtors, National R.V. Holdings, Inc. and National R.V., Inc.

Hamid R. Rafatjoo, Pachulski Stang Ziehl & Jones LLP, Los Angeles, CA, for Official Committee of Unsecured Creditors of National R.V., Inc.

Ali M.M. Mojdehi, Baker & McKenzie, LLP, San Diego, CA, for Ad Hoc Committee of Equity Holders.

Timothy J. Farris, Riverside, CA, for U.S. Trustee.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

The Ad Hoc Committee of Equity Holders (the "Ad Hoc Committee")[1] seeks an order directing the United States trustee to appoint an Official Committee of Equity Security Holders pursuant to § 1102(a)(2) of the Code.[2] National R.V. Holdings, Inc. ("NRVH"), National R.V., Inc. ("NRV"), the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and the United States trustee ("UST") oppose the request on the grounds that the appointment of such a committee is not necessary to assure adequate representation of the equity security holders. At the hearing, Ali M.M. Mojdehi appeared for the Ad Hoc Committee; Jonathan S. Shenson and David M. Guess appeared for NRVH and NRV; Hamid R. Rafatjoo appeared for the Creditors' Committee; and Timothy J. Farris appeared for the UST. The court, having considered the Ad Hoc Committee's motion and the opposition thereto, the evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law[3] pursuant to Fed.R.Civ.P. 52, as incorporated into Fed. R. Bankr.P. 7052 and made applicable to contested matters by Fed. R. Bankr.P. 9014(c).

## I. STATEMENT OF FACTS

On November 30, 2007, NRVH, a Delaware corporation, and NRV, a California corporation, filed voluntary petitions for relief under chapter 11 of the Code. NRVH is a holding company whose principal asset is 100% of the equity in NRV, the operating entity. For approximately 48 years prior to the filing of the petitions, NRVH and NRV (collectively, "the Debtors") designed, manufactured, and marketed "Class A" gas and diesel recreational vehicles ("RVs") at their facility in Perris, California, under various product names, including *Dolphin, Pacifica, Sea Breeze, Surf Side, Tradewinds,* and *Tropi–Cal.* At the time of bankruptcy, the Debtors were the ninth largest manufacturer of "Class A" RVs in the country distributing 1,500 RVs annually through 75 dealer locations in the United States and Canada. Shortly before the petition date, the Debtors succumbed to a liquidity crisis which resulted in a 90% workforce reduction and termination of continued operations. Debtors commenced the cases to preserve

---

1. The Ad Hoc Committee consists of Milfam II, L.P., Miller Irrevocable A–4, Millennium Partners, LLC, Michael Cooney, and Barry A. Shaw, Jr., who collectively hold 19% of the common stock of National R.V. Holdings, Inc.

2. Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 after its amendment by the Bankruptcy Abuse and Consumer Prevention Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P."), which make applicable certain Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

3. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

the value of their remaining assets. The cases have been jointly administered since December 12, 2007.

Debtors do not intend to reorganize. Their objective is to maximize the value of their assets through an orderly and expeditious liquidation. Debtors believe that value for the benefit of the estate can be derived from three sources: (1) the sale of inventory, both finished and unfinished RVs, parts and replacements; (2) the collection of accounts receivable and the sale of furniture, fixtures, and equipment ("FF & E"), intellectual property, and other assets; and (3) the successful prosecution of the Kemlite Litigation.[4]

On December 14, 2007, the UST appointed the Creditors' Committee in the NRV case pursuant to § 1102(a)(1). No committee was appointed in the NRVH case. By letter dated January 15, 2008, Mr. Mojdehi, on behalf of the Ad Hoc Committee, asked the UST to appoint an Official Committee of Equity Security Holders in the NRVH case reasoning that NRVH was solvent, the equity security holders were unique and unrepresented, and the cost of an equity security holders' committee would not be unduly burdensome. On January 23, 2008, the Creditors' Committee advised the UST that it opposed the appointment of an equity security holders' committee primarily because the equity security holders were, in the Creditors' Committee's opinion, "out of the money." After considering the Ad Hoc Committee's reply, the UST advised the Ad Hoc Committee, the Creditors' Committee, NRVH, and NRV on January 30, 2008, of his decision not to appoint an equity security holders' committee.[5]

---

4. On July 28, 2006, NRV filed a complaint against Crane Co. and Crane Composites, Inc., a/k/a Kemlite Company, Inc., seeking not less than $8 million in compensatory damages, plus punitive damages, attorneys fees and costs, for alleged breach of contract, breach of warranty, misrepresentation, and other causes of action in Case No. EDCV 06–00803 SGL PJWx, styled *National R.V., Inc. v. Crane Co., et. al.*, in the United States District Court, Central District of California, Eastern Division (the "Kemlite Litigation"). Trial of the case commenced on January 15, 2008.

5. Peter C. Anderson, United States Trustee for Region 16, arrived at his decision in the following manner:

In making my decision, I took into account into account the six factors set forth in Mr. Mojdehi's initial letter. I took into account that, at the present time, there is evidence that [NRVH] appears to be insolvent. I took into account that the interests of shareholders appear to be adequately represented at this time by four separate entities: the board of directors, who owe them a fiduciary duty; the insiders, especially those who are shareholders themselves, who owe equity a fiduciary duty as well; the Official Creditors' Committee, who has every reason to seek a maximum return on the assets of [NRV] as well as [NRVH]; and by the efforts of the Ad Hoc Committee itself. I determined that the case is not large or complex when compared to the reported cases in which equity security holders' committees have been previously appointed. Further, the cases involve a liquidation and prosecution of a lawsuit, not a reorganization. I considered that [NRVH]'s stock is not widely held as there are only "well over 100" shareholders, not the thousands and tens of thousands of holders in those reported cases in which an equity security holders' committee has been appointed, and almost half of the shares are reported to be owned by approximately six holders. I received no information as to how actively the shares are traded. I concluded that it was at least premature to consider the appointment of an equity security holders' committee in [NRVH] at this time,·as given the present status of the case, equity is "still out of the money." I concluded that the cost and delay associated with the appointment of an equity security holders' committee outweighed the cost of exclusive representation for equity security holders. For all of the foregoing reasons, I decided not to appoint an equity security holders' committee at this time.

On February 4, 2008, the Ad Hoc Committee moved for an order directing the immediate appointment of an official equity security holders' committee in the NRVH case "to provide equity holders with adequate representation in the chapter 11 process."[6] The Ad Hoc Committee's Motion was heard on shortened notice and opposed by the Debtors,[7] Creditors' Committee, and UST. After a hearing on February 19, 2008, the matter was taken under submission.

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

Section 1102(a)(1) directs the UST to appoint an unsecured creditors' committee as soon as practicable after entry of the order for relief in a chapter 11 case, and authorizes the UST in its discretion to "appoint additional committees of creditors or of equity security holders as [it] deems appropriate."[8] If the UST does not appoint a committee of equity security holders, the court, on the request of a party in interest, may exercise its discretion to order the appointment of an equity security holders' committee, but only if the appointment of such a committee is "necessary to assure adequate representation ... of equity security holders" under the facts and circumstances of the case.[9] The UST insists that its discretionary decision not to appoint an equity security holders' committee in the NRVH case must be reviewed under an abuse of discretion standard. The court disagrees.

Section 1102(a)(2) states plainly that "the court may order the appointment of additional committees ... if necessary to assure adequate representation" without reference to a standard of review applicable to any prior decision by the United States trustee. *See In re Enron Corp.,* 279 B.R. 671, 685 (Bankr.S.D.N.Y.2002) *aff'd sub nom. Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.,* 2003 WL 22327118 (S.D.N.Y. Oct.10, 2003) ("There is no indication, upon review of the plain language of the statute, that the court is constrained in making such a determination."); *In re McLean Indus., Inc.,* 70 B.R. 852, 857–58 (Bankr.S.D.N.Y.1987) ("Congress sought primarily to take bankruptcy

---

*Declaration of United States Trustee, Peter C. Anderson in support of United States Trustee's Opposition to Motion of Ad Hoc Committee for Appointment of Official Committee of Equity Security Holders,* p. 16, 1.15 to p. 17, 1.6.

6. *Motion of Ad Hoc Committee of Equity Holders for Appointment of Official Committee of Equity Holders* ("Motion"), p. 13, 1.18–19.

7. Debtors requested that the Ad Hoc Committee's Motion be continued for 30 days insisting that the critical question of whether equity was "in the money" hinged upon the outcome of the Kemlite Litigation.

8. Section 1102(a)(1) states:
Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee *shall* appoint a committee of creditors holding unsecured claims and *may* appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.
11 U.S.C. § 1102(a)(1) (emphasis added).

9. Section 1102(a)(2) provides:
On request of a party in interest, the court *may* order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.
11 U.S.C. § 1102(a)(2) (emphasis added).

judges out of the appointment process and Congress expressly retained in the bankruptcy courts the ability to decide *de novo* the question of whether additional committees are necessary to assure adequate representation."). As the court explained in *In re Texaco, Inc.*,

> The issue of adequate representation is one which is ultimately entrusted to the courts to decide upon an application made by a party in interest. This issue is determined on a *de novo* basis after the administrative task of appointing committees is performed by the United States Trustee. An abuse of discretion standard does not apply with respect to the United States Trustee's initial exercise of discretion because the concept of adequate representation is a legal issue which must be resolved judicially. Hence, the court's determination as to the adequacy of representation within the meaning of 11 U.S.C. § 1102(a)(2) is not an administrative review because this decision is committed to the court on a *de novo* basis. There is no requirement under 11 U.S.C. § 1102(a)(2) that an interested party must first submit such a request to the United States Trustee. Therefore, whether or not such a request was first submitted to the United States Trustee, the court must arrive at its own judgment, although the

court may consider reasons advanced by the United States Trustee in the event that such a request was previously submitted to the United States Trustee. 79 B.R. 560, 566 (Bankr.S.D.N.Y.1987). Therefore, the court will review the UST's decision not to appoint an official equity security holders' committee in the NRVH case, as requested by the Ad Hoc Committee, *de novo.*

■ The appointment of an additional committee is an extraordinary remedy. *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y.2006); *In re Winn–Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr.M.D.Fla. 2005); *Enron Corp.*, 279 B.R. at 685. The party moving for an order directing the appointment of an additional committee has the burden of establishing that it is not adequately represented.[10] *Dana Corp.*, 344 B.R. at 38; *Winn–Dixie*, 326 B.R. at 857; *Enron Corp.*, 279 B.R. at 685.

■ "Adequate representation" is not defined by the Code. *Winn–Dixie*, 326 B.R. at 857; *In re Leap Wireless Int'l, Inc.*, 295 B.R. 135, 137 (Bankr.S.D.Cal. 2003); *In re Williams Commc'ns Group, Inc.*, 281 B.R. 216, 220 (Bankr.S.D.N.Y. 2002). Courts addressing the issue of adequate representation generally consider the following non-exclusive factors: (1) the number of shareholders; (2) the complexi-

---

**10.** The Ad Hoc Committee's Motion is not supported by a declaration or other evidence. The Ad Hoc Committee simply requests that the court "take judicial notice of all matters of public record in the Debtors' above-captioned chapter 11 cases, including the Debtors' schedules and statement of financial affairs." *Motion*, p. 2, n. 2. A court has discretion to take judicial notice of adjudicative facts, but judicial notice is mandatory "if requested by a party and supplied with the necessary information." Fed.R.Evid. 201(c) & (d). In this case, the Ad Hoc Committee did not supply the necessary information in conjunction with its request for judicial notice. Furthermore, the court notes that, as of the date of the

hearing, there were 54 docket entries in the NRV case and 258 docket entries in the NRVH case. The Debtors' schedules and statements alone exceed 2,700 pages. NRVH's schedules and statement of financial affairs are 193 pages in length, and NRV's schedules and statement of financial affairs total 2,549 pages. "While the court may, in its discretion, take judicial notice of matters of public record, it is not the responsibility of the court to scour the record to make a party's case for it." *Krol v. North Shore Holdings, Ltd. (In re Sorci)*, 315 B.R. 723, 728 (Bankr.N.D.Ill.2004). Therefore, the Ad Hoc Committee's request for judicial notice is denied.

ty of the case; and (3) whether the cost of the additional committee significantly outweighs the concern for adequate representation. *Leap Wireless,* 295 B.R. at 137; *Williams Commc'ns,* 281 B.R. at 220; *In re Wang Laboratories, Inc.,* 149 B.R. 1, 2 (Bankr.D.Mass.1992). Other factors that may be considered by the court in determining adequacy of representation include:

1. Whether the shares are widely held and publicly traded;

2. The size and complexity of the chapter 11 case;

3. The delay and additional cost that would result if the court grants the motion;

4. The likelihood of whether the debtors are insolvent;

5. The timing of the motion relative to the status of the chapter 11 case; and

6. Other factors relevant to the adequate representation issue.

*Matter of Kalvar Microfilm, Inc.,* 195 B.R. 599, 600 (Bankr.D.Del.1996). "No one factor is dispositive, and the amount of weight that the court should place on each factor may depend on the circumstances of the particular Chapter 11 case." *Id.* at 600–601; *see Dana Corp.,* 344 B.R. at 38. In the final analysis, a court's decision to order the appointment of an equity security holders' committee is discretionary and turns on the facts of each case. *See Dana Corp.,* 344 B.R. at 38; *Williams Commc'ns,* 281 B.R. at 220; *Wang Laboratories,* 149 B.R. at 2.

▆ The following factors are relevant to the court's analysis in this case: (1) the likelihood of whether the Debtors are in-

solvent; (2) the size and complexity of the cases; (3) whether the shares are widely held and publicly traded; (4) whether the cost of the additional committee significantly outweighs the concern for adequate representation; and (5) other factors relevant to adequate representation.

*There is a Likelihood that the Debtors are Insolvent.*

▆ The principal issue on any motion for the appointment of an equity security holders' committee is whether the debtor is solvent or it appears likely that there will be a substantial return for equity. *See Williams Commc'ns,* 281 B.R. at 223 ("Such committees should not be appointed unless equity holders establish that (i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) they are unable to represent their interests in the bankruptcy case without an official committee"); *In re Emons Indus., Inc.,* 50 B.R. 692, 694 (Bankr.S.D.N.Y.1985) (opining that "no equity committee should be appointed when it appears that a debtor is hopelessly insolvent because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift").

The Ad Hoc Committee asserts that NRVH's schedules alone indicate equity of at least $42 million and therefore, a substantial likelihood of a meaningful distribution to equity security holders in the case. In its schedules filed on January 14, 2008, NRVH disclosed personal property valued at $53,876,748[11] and debts totaling $10,397,395. However, the schedules do

---

**11.** This valuation includes an "Intercompany Receivable from National R.V., Inc." in the amount of $45,101,873 (the "Inter-company Claim"), but does not include either NRVH's contingent and unliquidated claim made the basis of the Kemlite Litigation or NRVH's patents and trademarks which were each listed in Schedule B as having an "unknown" value.

not tell the whole story. NRVH's schedules do not accurately identify NRVH's assets or the fair market value of its assets. First, the information contained in NRVH's schedules appears to have been drawn from a *consolidated* balance sheet dated September 30, 2007, which commingled the assets and liabilities of NRV and NRVH. Second, NRVH revealed in paragraph 3(a) of a statement preceding the schedules entitled "Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding Debtors' Schedules and Statements" that the property identified in the schedules was valued at "book value" or NRVH's cost basis for the assets, not market value.[12] Finally, NRVH's schedules do not accurately reflect the prepetition claims that may ultimately be allowed against NRVH's assets. For example, Schedule E disclosed 15 holders of unsecured priority tax claims totaling $6,185, but identifies another 89 holders of contingent, unliquidated, and disputed unsecured priority tax claims of an unknown amount. Schedule F lists 12 holders of unsecured nonpriority claims totaling $747,635, but an additional 20 holders of contingent, unliquidated, and disputed unsecured nonpriority claims are scheduled in an unknown amount. The deadline to file proofs of claim does not expire until May 28, 2008.

At this time, there is no evidence that Debtors' collection of accounts receivable and liquidation of its inventory, FF & E, intellectual property, and other assets will put the equity security holders "in the money." Since the commencement of the case, the Debtors have worked closely with the Creditors Committee to liquidate the assets of the estate expeditiously but in a manner that maximizes value for the estate. A substantial portion of the Debtors' accounts receivable were collected prior to the creditors' meeting and used to pay secured creditors and operating expenses. Debtors sold their South Coast Reactive Organic Gas Emission Reduction Credits for approximately $1.6 million. Nearly $14.5 million is expected from the sale of the Debtors' finished and built-out RVs, but the estate may net only $2.6 million due to claims secured by the RVs and costs associated with the sales. Over $2.4 million of the sale proceeds will be used to reduce the secured claim of Wells Fargo Bank, N.A. and another $8.0 million must be set aside to satisfy claims of chassis vendors pending further order of the court. Furthermore, the estate has incurred administrative expenses in conjunction with the sale, including nearly $1.0 million for labor and materials to complete the build-out of at least 61 RVs. With respect to the FF & E and raw materials, the Creditors' Committee reports that the highest minimum guaranteed bid secured by the Debtors for the sale of the assets was only $1.6 million.

On the expense side, the Debtors estimate at least $7 million in administrative claims. And there are a number of unresolved issues. On December 12, 2007, a class action was commenced in Adversary No. 07–01305, styled *Henry Caouette v. National R.V. Holdings, Inc., et. al.,* in the United States Bankruptcy Court, Central District of California, Riverside Division, for recovery of damages by Henry Caouette and other similarly situated employees of the Debtors in the amount of 60 days' pay and ERISA benefits for alleged violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, *et. seq.,* and California Labor

---

**12.** NRVH included a footnote to the total asset value disclosed on the Summary of Schedules which states: "This amount does not include the items where no book value has been liquidated."

Code §§ 1400, *et. seq.* (the "WARN Act Litigation"). The Creditors' Committee estimates that the Debtors' potential liability in the WARN Act Litigation is $4 million. Reclamation claims must be resolved and the claims of the chassis vendors must be adjudicated. The Debtors also face a continuing administrative claim for rent in excess of $258,500 per month if they are unable to exit their leased space in Perris, California, by April 30, 2008.

At the time of submission, the issue of whether equity was "in the money" boiled down to whether (and to what extent) the Debtors would be successful in the Kemlite Litigation. On February 26, 2008, the jury returned a verdict in favor of the Debtors for $3.5 million in damages—$21.5 million short of the amount sought by the Debtors. Even assuming the verdict is reduced to judgment and paid in full, equity security holders will not be "in the money" given the slim recovery and the contingent fees and costs payable to Debtors' special litigation counsel, O'Melveny & Myers LLP. Based on the foregoing, there is a substantial likelihood that the Debtors are insolvent and that equity security holders will not receive a meaningful distribution in the NRVH case.

*Debtors' Cases are Not Large or Complex.*

The jointly administered cases are not large or complex, nor are the interests of creditors and equity security holders so conflicting as to require the appointment of an equity security holders' committee to assure adequate representation. *See Williams Commc'ns*, 281 B.R. at 222 (concluding that "the Creditors' Committee has sufficiently aligned or parallel interests with the Shareholders to preclude the need for an additional committee"). The cases are focused on the expeditious liquidation of assets. Since the commencement of the case, the Debtors have taken action to collect accounts receivable, sell emission credits, and liquidate the inventory of RVs and replacement parts. The sale of substantially all of the Debtors' remaining RVs should be completed in approximately 45 days. Debtors intend to sell the FF & E, excess raw materials, and intellectual property through a liquidator within the next 60 days. The Kemlite Litigation should conclude shortly in view of the $3.5 million verdict in favor of the Debtors. Once the auction is completed, the attention will turn to claims adjudication and a plan for distribution on account of allowed claims. Equity security holders may receive a distribution if, and only if, funds remain after the payment of administrative expenses and allowed claims.

*NRVH's Shares are Publicly Traded, But Not Widely Held.*

NRVH may be a publicly traded company, but it has traded over the counter in the Pink Sheet market since its withdrawal from the OTC Bulletin Board. The Ad Hoc Committee did not provide any evidence establishing that NRVH's shares are actively traded. Nor does it appear that NRVH stock is widely held. There may be "well over 100" equity holders in NRVH, but it is undisputed that 50% of the 10,339,484 outstanding shares of common stock in the company are held by 6 individuals or entities. "Not every case with public shareholders warrants an equity committee." *Emons Indus.*, 50 B.R. at 694.

*Whether the Cost of an Equity Security Holders' Committee Significantly Outweighs the Concern for Adequate Representation.*

The Ad Hoc Committee concedes that the court must balance the potential value of an equity security holders' committee's representation against the administrative costs associated with appointment of the

committee.[13] *Wang*, 149 B.R. at 3 (stating that the "equation requires a balancing of the cost of the additional committee against the value of the representation to be provided"); *In re Beker Indus. Corp.*, 55 B.R. 945, 949 (Bankr.S.D.N.Y.1985) (observing that "the appointment of additional committees is 'closely followed by applications to retain attorneys and accountants.'" (citation omitted)). Having determined that the equity security holders will not be "in the money" and thereby receive a meaningful distribution, this factor weighs heavily against the appointment of an official committee of equity security holders in the NRVH case.

*Other Factors Relevant to Adequate Representation.*

The Ad Hoc Committee maintains that Debtors' executive officers and directors have little incentive to adequately represent the interests of equity security holders given the fact that collectively they hold not more than 3% of NRVH's common stock. However, this argument ignores the fiduciary obligations of NRVH and NRV, as debtors in possession, to both creditors and equity security holders.

When the debtor is a corporation, the debtor in possession's fiduciary obligations to the corporation, its creditors and shareholders, fall upon the officers and directors. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (stating that "the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession"); *Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.)*, 145 B.R. 637, 643 (9th Cir.BAP1992) ("When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors.").

Corporate officers, as fiduciaries, must protect and preserve estate assets held in trust for the benefit of creditors. *Holta*, 145 B.R. at 643; *Hirsch v. Penn. Textile Corp. (In re Centennial Textiles, Inc.)*, 227 B.R. 606, 612 (Bankr.S.D.N.Y.1998) ("As fiduciaries, the debtor in possession and its managers are obligated to treat all parties to the case fairly, maximize the value of the estate, and protect and conserve the debtor's property" (internal citations omitted)). In this regard, the Ninth Circuit holds the debtor in possession's corporate officers to the standards of "officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties." *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912, 917 (9th Cir.1991); *see York Int'l Building, Inc. v. Chaney (In re York Int'l Building, Inc.)*, 527 F.2d 1061, 1068 (9th Cir.1975) (noting that special masters administering bankruptcy estates "are not acting as private persons, but as officers of the court").

The Ad Hoc Committee has the burden to demonstrate the need for adequate representation and there are no facts to suggest that management is not aligned with non-insider equity security holders. The Ad Hoc Committee has not presented any evidence that the Debtors' officers or directors have either breached their fiduciary duties to the equity security holders or are incapable of properly discharging their fiduciary duties in these jointly administered cases.

Nor is there evidence to support the Ad Hoc Committee's further contention that the Creditors Committee is bent on disallowing NRVH's Inter-company Claim for

---

**13.** *Motion*, p. 12, l.28 to p. 13, l.2.

the sole purpose of maximizing distributions to the holders of *other* unsecured nonpriority claims of NRV. The Creditors Committee was appointed by the UST to represent the interests of NRV's unsecured creditors. NRVH is an unsecured creditor of NRV by virtue of the Inter-company Claim. The Creditors' Committee and its members have a fiduciary duty to all creditors represented by the committee, including NRVH. *In re Barney's, Inc.*, 197 B.R. 431, 442 (Bankr.S.D.N.Y.1996); *see Bohack Corp. v. Gulf & Western Indus., Inc.*, 607 F.2d 258, 262 n. 4 (2d Cir.1979) (stating that a "committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors"). While the committee may be motivated to investigate the inter-company transaction between NRVH and NRV, there is no evidence that the Creditors' Committee is unable to properly discharge its fiduciary obligations to all of NRV's unsecured creditors, including NRVH, or that the Creditors' Committee has an irreconcilable conflict of interest necessitating the formation of an equity security holders' committee in NRVH for the sole purpose of protecting NRVH's general unsecured claim in the NRV case.

## III. CONCLUSION

In summary, the court finds that the appointment of an official committee under § 1102(a)(2) is not necessary at this time to assure adequate representation of NRVH's equity security holders under the specific facts of this case and therefore, the Ad Hoc Committee's Motion should be denied. The Ad Hoc Committee is not without recourse. The Ad Hoc Committee may continue to appear and be heard on any issue in the case. 11 U.S.C. § 1109(b). If the court determines that its work results in a substantial contribution to the estate, the Ad Hoc Committee's actual, necessary expenses may be reimbursed under § 503(b)(3)(D). 11 U.S.C. § 503(b)(3)(D); *see Leap Wireless*, 295 B.R. at 140; *Williams Commc'n*, 281 B.R. at 223–24.

A separate order will be entered consistent with this opinion.